

390 North Broadway – Ste. 140 | Jericho, New York 11753
MAIN TELEPHONE: (516) 455-1500 | FACSIMILE: (631) 498-0478

DALLAS | NEW YORK | NAPLES

May 26, 2022

**Via ECF**

Honorable Lorna G. Schofield
United States District Judge
Southern District of New York
Thurgood Marshall U.S. Courthouse
40 Foley Square, Courtroom 1106
New York, New York 10007

    Re:    *DarkPulse, Inc. v. EMA Financial, LLC, et al.*, No. 22-cv-00045-LGS

Dear Judge Schofield:

We are counsel for Plaintiff DarkPulse, Inc. ("DarkPulse") in the above-referenced action. We submit this letter in response to the May 20, 2022 pre-motion letter filed by Defendants EMA Financial, LLC ("EMA Financial"), EMA Group, LLC ("EMA Group"), and Felicia Preston's ("Preston") (EMA Financial, EMA Group, and Preston, collectively, the "Defendants") (ECF 34) in advance of their motion to dismiss DarkPulse's amended complaint (ECF 34) ("Compl.").

DarkPulse's Claims Under the Securities Exchange Act of 1934 are Timely

The one-year/three-year limitations period set forth in § 29(b) of the Securities Exchange Act ("Exchange Act") is limited to claims of "fraud," which are not pled in this case. *See* 15 U.S.C. § 78cc; *Lawrence v. Richman Grp. of Conn., LLC*, 407 F. Supp. 2d 385, 389 n.7 (D. Conn. 2005).

Even if the Court were to apply the 1-year/3-year rule in this case, however, DarkPulse's claims would be timely under the continuing violation doctrine, which is "aimed at ensuring that illegal conduct is punished by preventing a defendant from invoking the earliest manifestation of its wrongdoing as a means of running out the limitations clock on a course of misconduct that persisted over time." *SEC v. Almagarby*, 479 F. Supp. 3d 1266, 1271 (S.D. Fla. 2020).

As an unregistered dealer, EMA Financial first violated § 15(a) on September 25, 2018, when it used the channels of interstate commerce to effect securities transactions via the Securities Purchase Agreement and Note. Thereafter, it committed a fresh, independent violation of § 15(a) each time it effected a transaction in DarkPulse securities or induced or attempted to induce the purchase or sale of a DarkPulse security. *See* Compl. at ¶¶ 71-75; *UFCW Local 1500 Pension Fund v. Mayer*, 2016 U.S. Dist. LEXIS 145091, at *36 (N.D. Cal. Oct. 19, 2016). On October 22, 2020, Defendants "purchased" 77,623,000 newly-issued shares of DarkPulse common stock via voluntary conversion. *See* Compl. at ¶ 74; 15 U.S.C. § 78c(a)(13) ("The terms 'buy' and

May 26, 2022
*DarkPulse, Inc. v. EMA Financial, LLC, et al.*, 22-cv-00045-LGS
Page **2** of **3**

'purchase' each include any contract to buy, purchase, or *otherwise acquire*.") (emphasis added). Thus, the operative date is October 22, 2020.  This action was commenced on January 4, 2022 (ECF 1), *i.e.*, approximately one year and two months after Defendants' last known securities violation.  Accordingly, DarkPulse's claims are timely.

Defendants are mistaken that Agreements are contracts that were not made or subsequently performed in violation of the Act.  *See* § 78cc (emphasis added); *Mills v. Electric Auto-Lite Co.*, 396 U.S. 375 (1970).   It cannot be disputed that DarkPulse's allegations—which must be accepted as true—adequately state that Defendants are engaged in the business of buying and selling securities for their own account and, therefore, are "dealers."  § 78c(a)(5)(A).  *See, e.g., Eastside Church of Christ v. Nat'l Plan, Inc.*, 391 F.2d 357 (5th Cir. 1968); *Reg'l Props. Inc. v. Fin. & Real Est. Consulting Co.*, 678 F.2d 552, 559 (5th Cir. 1982); *Edgepoint Capital Holdings, LLC v. Apothecare Pharmacy, LLC*, 6 F.4th 50, 57-58 (1st Cir. 2021); *Berckeley Inv. Grp., Ltd. v. Colkitt*, 455 F.3d 195, 205 (3d Cir. 2006).  Consequently, Defendants, and violated the Exchange Act when they made and subsequently performed contracts that used the instrumentalities of interstate commerce to effect or to induce or attempt to induce the purchase or sale of DarkPulse securities, both in the form of the Note and the newly-issued shares of common stock.  *See generally* Compl.

The SDNY cases cited by Defendants[1] reach conclusions that are at odds with the plain language of the statute.  *See* § 78cc.  Additionally, Defendants overlook the fact that the SPA does, in fact, obligate them to act as an unregistered dealer.  *See* Compl. at Exhibit 1 (ECF 13-1) at 1 ("the Company desires to issue and sell to the Purchaser, and the Purchaser desires to purchase from the Company a 8% Convertible Note of the Company … in the principal amount of $1000,000.00").  *See also* § 78c(a)(10) ("The term 'security' means any *note*, stock…") (emphasis added).

DarkPulse's RICO Claims are Well-Pled

Defendants raise defenses under New York's state usury law that are irrelevant under the Racketeer Influenced and Corrupt Organizations Act ("RICO").  *Compare* N.Y. Gen. Oblig. L. § 5-521, *with* 18 U.S.C. § 1961, *et seq.*

Defendants' argument concerning the RICO enterprise has been rejected by the United States Supreme Court.  *See Cedric Kushner Productions, Ltd. v. King*, 533 U.S. 158, 161 (2001) (finding the enterprise "distinctness" or "separateness" requirement is met for a RICO claim when a "corporate owner/employee, a natural person, is distinct from the corporation itself, a legally different entity with different rights and responsibilities due to its different legal status").   There is no disputing that EMA Financial, EMA Group, and Preston are three legally distinct persons, each with unique legal rights and responsibilities.

Finally, Defendants are grossly mistaken in asserting that the Note does not impose an unlawful debt.  *See* 18 U.S.C. § 1961(6).  To explain, the New York Court of Appeals specifically held that a conversion discount in a convertible note is a right that was bargained for, always provides

---

[1] *See LG Cap. Funding, LLC v. ExeLED Holdings, Inc.*, 2018 WL 6547160 (S.D.N.Y. Sept. 28, 2018); *EMA Fin., LLC v. Vystar Corp., Inc.*, 2021 WL 1177801 (S.D.N.Y. Mar. 29, 2021).

additional consideration, and, therefore, constitutes interest that must be considered in a usury analysis. *See Adar Bays, LLC v. GeneSYS ID, Inc.*, 37 N.Y.3d 320, 336-39 (N.Y. 2021). The fact that Note was for a 9-month term is of no consequence because DarkPulse alleges that Note imposes an effective annualized interest rate of 73% APR, which is more than double the maximum enforceable rate permitted by New York law. *See* Compl. at ¶¶ 63-68, 100-108; *Adar Bays, supra* (citing N.Y. Penal Law § 190.40); § 1961(6). Defendants also erroneously state that the additional value provided by the conversion feature was only made available when a default occurred. This theory, however, is not consistent with *Adar Bays* which requires the value of such conversion option to be "measured at the time of contracting." 37 N.Y.3d at 334. This is a question of fact *i.e.*, dismissal is not appropriate at this stage.

DarkPulse's State Claims are Actionable

Defendants' cite no authority to support dismissal of DarkPulse's state claims. DarkPulse's unjust enrichment and constructive trust claims are well-pled and should not be dismissed.

*       *       *

Defendants' arguments have so little merit that its proposed motion would be futile. Accordingly, its request to file a motion to dismiss should be denied.

Respectfully Submitted,

**THE BASILE LAW FIRM P.C.**

 */s/ Gustave P. Passanante, Esq.*
Gustave P. Passanante, Esq.
Eric J. Benzenberg, Esq.
390 N. Broadway, Suite 140
Jericho, New York 11753
Tel.:   (516) 455-1500
Fax.   (631) 498-0478
Email: gus@thebasilelawfirm.com
            eric@thebasilelawfirm.com

*Attorneys for DarkPulse, Inc.*