UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DARKPULSE, INC., | 22 Civ. 00045 (LGS) |
| Plaintiff, | |
| -against- | |
| EMA FINANCIAL, LLC, EMA GROUP, LLC, and FELICIA PRESTON, | |
| Defendants. | |

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANTS' MOTION TO DISMISS

OLSHAN FROME WOLOSKY LLP
1325 Avenue of the Americas
New York, New York 10019
(212) 451-2300
*Attorneys for Defendants EMA Financial,
LLC, EMA Group, LLC and Felicia Preston*

# TABLE OF CONTENTS

Page

Preliminary Statement ........................................................................................................1

Statement of Facts ...........................................................................................................3

    The Parties .................................................................................................................3

    The Note.....................................................................................................................4

    Procedural History .....................................................................................................5

Argument .........................................................................................................................5

    I DARKPULSE'S EXCHANGE ACT CLAIMS SHOULD BE DISMISSED.................5

        A.      DarkPulse's Exchange Act Claims are Time-Barred...................................5

        B.      DarkPulse Fails to State a Claim under the Exchange Act ..........................7

        C.      DarkPulse Fails to Allege Control Person Liability ....................................9

    II THE COURT SHOULD DISMISS DARKPULSE'S RICO CLAIM ..........................10

        A.      Plaintiff Has Not Alleged an Enterprise ...................................................12

        B.      DarkPulse Has Not Sufficiently Pled "Unlawful Debt" Covered by RICO ........................................................................................................13

    III THE COURT SHOULD DISMISS DARKPULSE'S STATE LAW CLAIMS ..........16

Conclusion ......................................................................................................................18

Page(s)

CASES

*1077 Madison Street, LLC v. Daniels,*
   954 F.3d 460 (2d Cir. 2020)..............................................................................14

*Acklin v. Eichner,*
   20 Civ. 7042 (GHW), 2021 WL 4442819 (S.D.N.Y. Sept. 27, 2021)....................17

*Adar Bays, LLC v. GeneSYS ID, Inc.,*
   28 F.4th 379 (2d Cir. 2022) ..............................................................................14

*Adar Bays, LLC v. GeneSYS ID, Inc.,*
   37 N.Y.3d 320 (2021) .......................................................................................14

*Alpha Capital Anstalt v. Oxysure Systems, Inc.,*
   216 F. Supp. 3d 403 (S.D.N.Y. 2016)..................................................................6

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.,*
   493 F.3d 87 (2d Cir. 2007)..................................................................................3

*Att'y Gen. of Can. v. R.J. Reynolds Tobacco Holdings, Inc.,*
   268 F.3d 103 (2d Cir. 2001)..............................................................................10

*Beaufort Cap. Partners LLC v. Oxysure Sys., Inc.,*
   No. 16 Civ. 5176 (JPO), 2017 WL 913791 (S.D.N.Y. Mar. 7, 2017) ....................14

*Cellucci v. O'Leary,*
   19 Civ. 2752 (VEC), 2020 WL 977986 (S.D.N.Y. Feb. 28, 2020) .........................16

*Clark-Fitzpatrick, Inc. v. Long Island R. Co.,*
   70 N.Y.2d 382, 516 N.E.2d 190 (1987)................................................................17

*Contract Transport Servs., Inc. v. New Era Lending LLC,*
   17 Civ. 8224 (AT), 2018 WL 11226077 (S.D.N.Y. Oct. 26, 2018) ........................16

*Dae Hyuk Kwon v. Santander Consumer USA,*
   742 F. App'x 537 (2d Cir. 2018) ..................................................................11, 14

*DeFalco v. Bernas,*
   244 F.3d 286 (2d Cir. 2001)..............................................................................12

*Durante Bros. & Sons, Inc. v. Flushing Nat'l Bank,*
   755 F.2d 239 (2d Cir. 1985)..........................................................................15, 16

*EMA Fin., LLC v. NFusz, Inc.*,
444 F. Supp. 3d 530 (S.D.N.Y. 2020) ..................................................................16

*EMA Fin., LLC v. NFusz, Inc.*,
509 F. Supp. 3d 18 (S.D.N.Y. 2020) ....................................................................8

*EMA Fin., LLC v. Vystar Corp., Inc.*,
19 Civ. 1545 (ALC) (GWG), 2021 WL 1177801 (S.D.N.Y. Mar. 29, 2021),
*reconsideration denied* 2021 WL 5998411 (S.D.N.Y. Dec. 20, 2021) ...............7, 8

*Ernst & Ernst v. Hochfelder*,
425 U.S. 185 (1976) ............................................................................................10

*Fezzani v. Bear, Stearns & Co., Inc.*,
384 F. Supp. 2d 618 (S.D.N.Y. 2004), *on reconsideration in part*, No. 99 Civ.
0793 (RCC), 2004 WL 1781148 (S.D.N.Y. Aug. 10, 2004) ..................................10

*Frati v. Saltzstein*,
10 Civ. 3255 (PAC), 2011 WL 1002417 (S.D.N.Y. Mar. 14, 2011) ..................8, 16

*Gross v. Waywell*,
628 F. Supp. 2d 475 (S.D.N.Y. 2009) ..................................................................10

*Hottinger v. Amcoal Energy Corp.*,
89 Civ. 6391 (LMM), 1992 WL 349851 (S.D.N.Y. Nov. 10, 1992) ........................6

*iBio, Inc. v. Fraunhofer USA, Inc.*,
No. CV 10256-VCF, 2020 WL 5745541 (Del. Ch. Sept. 25, 2020) .......................18

*In re Bibox Grp. Holdings Ltd. Sec. Litig.*,
534 F. Supp. 3d 326 (S.D.N.Y. 2021) ....................................................................6

*Intima-Eighteen, Inc. v. A.H. Schreiber Co.*,
172 A.D.2d 456 (1st Dep't 1991) .........................................................................11

*JD Anderson v. Binance*,
20 Civ. 2803 (ALC), 2022 WL 976824 (S.D.N.Y. Mar. 31, 2022).........................7

*Kahn v. Kohlberg, Kravis, Roberts & Co.*,
970 F.2d 1030 (2d Cir. 1992) .................................................................................6

*Lapin v. Goldman Sachs Grp., Inc.*,
506 F. Supp. 2d 221 (S.D.N.Y. 2006) ....................................................................9

*LG Cap. Funding, LLC v. ExeLED Holdings, Inc.*,
17 Civ. 4006 (RJS), 2018 WL 6547160 (S.D.N.Y. Sept. 28, 2018).........................8

iii

*Lynn v. McCormick,*
  17 Civ. 1183 (CS), 2017 WL 6507112 (S.D.N.Y. Dec. 18, 2017), *aff'd*, 760 F.
  App'x 51 (2d Cir. 2019)............................................................................13

*Lynn v. McCormick,*
  760 F. App'x 51 (2d Cir. 2019) ................................................................13

*Metro Ambulance, Inc. v. Eastern Medical Billing, Inc.,*
  No. C.A. 13929, 1995 WL 409015 (Del. Ch. July 5, 1995) ....................18

*Metropolitan Elec. Mfg. Co. v. Herbert Constr. Co.,*
  183 A.D.2d 758 (2nd Dep't 1992) ...........................................................17

*Moses v. Apple Hospitality Reit Inc.,*
  14 Civ. 3131, 2015 WL 1014327 (E.D.N.Y. Mar. 9, 2015) ....................18

*Moss v. BMO Harris Bank, N.A.,*
  258 F. Supp. 3d 289 (E.D.N.Y. 2017) .....................................................10

*O'Neill v. Standard Homeopathic Co.,*
  346 F. Supp. 3d 511 (S.D.N.Y. 2018)........................................................3

*Obstfeld v. Thermo Niton Analyzers, LLC,*
  108 A.D.3d 658 (2d Dep't 2013) ................................................................6

*Omega Overseas Partners, Ltd. v. Griffith,*
  13 Civ. 4202 (RJS), 2014 WL 3907082 (S.D.N.Y. Aug. 7, 2014) ............8

*Parallax Health Scis., Inc. v. EMA Fin., LLC,*
  No. 20 Civ. 2375 (LGS) (RWL), 2022 WL 1446521 (S.D.N.Y. Feb. 24, 2022) ....................8

*Petroff Amshen LLP v. Alfa Rehab PT PC,*
  No. 21-847, 2022 WL 480475 (2d Cir. Feb. 17, 2022) ...........................12

*Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A.,*
  30 F.3d 339 (2d Cir. 1994).......................................................................12

*Rosenson v. Mordowitz,*
  11 Civ. 6145 (JPO), 2012 WL 3631308 (S.D.N.Y. Aug. 23, 2012)........10

*Sadallah v. City of Utica,*
  No. 383 F.3d 34 (2d Cir. 2004).................................................................17

*Sec. & Exch. Comm'n v. Hansen,*
  No. 13-CV-1403 (VSB), 2017 WL 1298022 (S.D.N.Y. Mar. 31, 2017), *aff'd*
  *sub nom. United States Sec. & Exch. Comm'n v. Hansen,* 712 F. App'x 99 (2d
  Cir. 2018) ....................................................................................................7

iv

*Tanzanian Royalty Exploration Corp. v. Crede CG III, Ltd.*,
  18 Civ. 4201 (LGS), 2019 WL 1368570 (S.D.N.Y. Mar. 26, 2019) .........................................8

*Teachers' Ret. Sys. of Louisiana v. Aidinoff*,
  900 A.2d 654 (Del. Ch. 2006) ...........................................................................................18

*Thea v. Kleinhandler*,
  807 F.3d 492 (2d Cir. 2015) ................................................................................................5

*U1it4less, Inc. v. Fedex Corp.*,
  871 F.3d 199 (2d Cir. 2017) ..............................................................................................12

*VGS, Inc. v. Castiel*,
  No. C.A. 17995, 2003 WL 723285 (Del. Ch. Feb. 28, 2003) ...............................................18

*Wachovia Sec., LLC v. Joseph*,
  56 A.D.3d 269 (1st Dep't 2008) .........................................................................................18

*Wade Park Land Holdings, LLC v. Kalikow*,
  21 Civ. 1657 (LJL), 2022 WL 657664 (S.D.N.Y. Mar. 4, 2022) .....................................11, 15

*Zerman v. Jacobs*,
  510 F. Supp. 132 (S.D.N.Y. 1981), *aff'd*, 672 F.2d 901 (2d Cir. 1981) .................................8

## STATUTES

15 U.S.C. § 78c(a)(5)(A) .........................................................................................................9

15 U.S.C. § 78cc(b) .............................................................................................................5, 8

18 U.S.C. § 1961(3) ..............................................................................................................12

18 U.S.C. § 1961(4) ..............................................................................................................12

18 U.S.C. § 1961(6) ..............................................................................................................13

18 U.S.C. § 1962(c) ..............................................................................................................11

28 U.S.C. § 1332(a) ..............................................................................................................16

## OTHER AUTHORITIES

Federal Rule of Civil Procedure 12(b) .......................................................................................5

N.Y. G.O.L. § 5-521 ..............................................................................................................11

Defendants EMA Financial, LLC ("EMA Financial"), EMA Group, LLC ("EMA Group"), and Felicia Preston (collectively, "Defendants"), by their undersigned attorneys, respectfully submit this memorandum of law in support of their motion to dismiss the First Amended Complaint of Plaintiff DarkPulse, Inc. ("Plaintiff" or "DarkPulse"), pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6) and 12(b)(1). For the reasons stated herein, Defendants' motion should be granted.

Preliminary Statement

Plaintiff is a sophisticated party that regularly solicits investments in the form of convertible notes. Over the last several years, Plaintiff has entered into over a dozen transactions similar to the one it entered into with Defendant EMA Financial. In 2018, Plaintiff and EMA Financial entered into a Securities Purchase Agreement pursuant to which EMA Financial loaned Plaintiff $100,000, and Plaintiff issued a nine-month convertible note to EMA Financial granting EMA the right to convert the debt into shares in Plaintiff's stock during the last three months of the note. Plaintiff failed to repay the note on maturity. EMA Financial converted a portion of the note both before maturity and thereafter in 2019 and 2020.

In early 2022, Plaintiff commenced this action, arguing that the 8% convertible note at issue is usurious and that Defendants acted as unregistered broker-dealers. According to Plaintiff, it presented claims under the Exchange Act, RICO, and state law. Each of its claims should be dismissed.

*First*, Plaintiff's Exchange Act claims are barred by the applicable three year statute of repose and one year statute of limitations. Plaintiff and EMA Financial entered into the transaction at issue in 2018 – more than three years before Plaintiff filed its claims. And, Plaintiff knew, or could have with reasonable diligence known, of the basis for its alleged claims at that time or,

alternatively, no later than the date of the last conversion in 2020 – more than one year before Plaintiff filed its claims. Those claims should thus be dismissed. *See* Point I.A., *infra*.

*Second*, Plaintiff has not stated any claim under the Exchange Act. Neither the Securities Purchase Agreement nor Note at issue involved a prohibited transaction. In fact, this Court has already held that a similar transaction entered into by EMA was neither made nor performed in violation of any federal securities laws as required for rescission under the Exchange Act. Nor is EMA an unregistered broker or dealer. But even if it was, that would have no bearing on the validity of the transaction documents here, because those documents did not require EMA to act as a broker or dealer. DarkPulse's Exchange Act claims therefore fail. *See* Points I.B. and I.C., *infra*.

*Third*, DarkPulse seeks to turn its dispute over the terms of one convertible note into a civil RICO claim, alleging (without any supporting facts) that the Defendants are engaged in some unspecified criminal enterprise. However, every element of a civil RICO claim is absent here. *See* Point II., *infra*.

*Finally*, DarkPulse's state law claims should be dismissed because, without any remaining federal question, this Court lacks subject matter jurisdiction over those claims. Yet even if this Court retained jurisdiction, DarkPulse has failed to plead the necessary elements of any state law claim. *See* Point III., *infra*.

Accordingly, for the reasons set forth in greater detail below, Defendants respectfully request that the Court grant their motion in its entirety.

The facts set forth below are taken from Plaintiffs' First Amended Complaint (the "Complaint") (Dkt. No. 13), and exhibits to the Declaration of Kerrin T. Klein, dated June 22, 2022 (the "Klein Decl.").[1] The facts alleged in the Complaint are accepted here only for the limited purpose of the present motion.

The Parties

Defendants EMA Financial and EMA Group are limited liability companies organized under the laws of Delaware, with their principal places of business in New York. (Complaint, ¶¶ 23, 25.) EMA Group is the investment manager of EMA Financial. (*Id.*, ¶ 27.) Plaintiff alleges that Defendant Felicia Preston is the managing member of EMA Group and a resident of New York. (*Id.*, ¶¶ 29-30.)

Plaintiff DarkPulse is a corporation organized under the laws of Delaware, with its principal place of business and headquarters located in New York. (*Id.*, ¶ 21.) DarkPulse's stock trades on the over-the-counter market. (*Id.*, ¶ 22.)

Since its formation in 2018, DarkPulse has repeatedly financed its business through the issuance of convertible promissory notes, which give the holder the option to convert the unpaid balance on the notes to shares of DarkPulse common stock. (Klein Decl., Ex. A (DarkPulse, Inc., Form 424B4 (Prospectus) (May 3, 2022) at 20-21, 24, 27; Klein Decl., Ex. B (DarkPulse, Inc.,

---

[1] The Klein Decl. annexes documents that this Court may consider in deciding this motion, including "statements or documents incorporated into the complaint by reference, legally required public disclosure documents filed with the SEC, and documents possessed by or known to the plaintiff and upon which it relied in bringing the suit." *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007). *See also O'Neill v. Standard Homeopathic Co.*, 346 F. Supp. 3d 511, 519 nn.1–2 (S.D.N.Y. 2018) (the Court may take notice of publicly available news articles and websites where their authenticity is not reasonably in dispute).

Quarterly Report (Form 10-Q) (May 16, 2022) at 28 ("We have been able to raise working capital to fund operations through the issuances of convertible notes or obtained through the issuance of our restricted common stock.").) Between July 2018 and November 2021, DarkPulse entered into at least 15 different convertible notes with multiple investment funds, including the Note that is the subject of this dispute. (Klein Decl., Ex. A., at 20–21; Klein Decl., Ex. C, DarkPulse, Inc. (Annual Report (Form 10-K) dated Apr. 16, 2019) at 15–16.)[2] And in 2020 and in 2021, those notes were converted on dozens of occasions, with DarkPulse issuing well over 3 billion common shares, including a portion of the 567,242,000 common shares issued to EMA Financial. (Klein Decl., Ex. D, DarkPulse, Inc. (Form S-1/A dated December 9, 2021) at II-3-II-5; Complaint, ¶¶ 71-74.)

The Note

On September 25, 2018, DarkPulse and EMA Financial entered into a Securities Purchase Agreement (the "SPA") pursuant to which DarkPulse issued an 8% Convertible Note to EMA Financial (the "Note") in the principal amount of $100,000. (Complaint, Exs. 1-2.) The Note had a maturity date of June 25, 2019, on which date DarkPulse was required to repay all principal and interest on the Note. (Complaint, Ex. 2.) The Note also granted EMA Financial the right to convert all or part of the amount outstanding under the Note to shares of DarkPulse common stock, after the six-month holding period set forth in Rule 144, at a price equal to the lower of: (i) $0.25, and (ii) 70% of either the lowest sale price from the common stock during the twenty prior trading days, or the closing bid price. (Complaint, Ex. 2 at §§ 1.1, 1.2; Complaint, ¶¶ 43, 64, 71-74.)

---

[2] DarkPulse has filed a similar action against at least one of those investment funds. *See DarkPulse, Inc. v. FirstFire Global Opportunities Fund, LLC et al.*, 21 Civ. 11222 (ER) (S.D.N.Y.).

EMA submitted nineteen conversions pursuant to the Note between April 2019 and October 2020 – nine on or before the maturity date of the Note, and ten thereafter, following DarkPulse's non-payment under the terms of the Note. (Complaint, ¶¶ 71-74.)

Procedural History

On January 4, 2022, Plaintiff brought this action against Defendants. On March 28, 2022, Plaintiff amended its complaint and asserted claims against Defendants for: (a) rescission against all Defendants pursuant to Section 29(b) of the Exchange Act for alleged violation of Section 15(a) of the Exchange Act for acting as an unregistered dealer (Counts I and II); (b) violation of Section 20(a) of the Exchange Act against Defendant Preston as a control person of EMA by acting as an unregistered dealer (Count III); (c) violation of RICO against all Defendants (Count IV); (d) unjust enrichment against all Defendants (Count V); and (e) constructive trust against all Defendants (Count VI). Defendants now move to dismiss pursuant to Rule 12(b)(6) and 12(b)(1).

## Argument

## I

## DARKPULSE'S EXCHANGE ACT CLAIMS SHOULD BE DISMISSED

This Court should dismiss DarkPulse's Exchange Act claims (Counts I-III) for at least two reasons: those claims are time barred, and DarkPulse fails to state a claim. A statute of limitations defense may be decided on a Rule 12(b)(6) motion where, as here, "'the defense appears on the face of the complaint.'" *Thea v. Kleinhandler*, 807 F.3d 492, 501 (2d Cir. 2015).

### A. DarkPulse's Exchange Act Claims are Time-Barred

Plaintiff's first three counts arise under Section 29(b) of the 1934 Act, 15 U.S.C. § 78cc(b). A Section 29(b) action must be brought within "one year after the discovery that [a] sale or purchase involves [a violation of Section 15(a)] and within three years after such violation." 15 U.S.C. §

5

78cc(b). The "one-year statute of limitations for any implied cause of action under Section 29(b) of the Exchange Act . . . runs from the time when an individual 'could have, through the exercise of reasonable diligence, discovered the fraud' at issue" – here, the time plaintiff was or could have discovered "that [EMA] was not a licensed broker-dealer." *Alpha Capital Anstalt v. Oxysure Systems, Inc.*, 216 F. Supp. 3d 403 (S.D.N.Y. 2016). The three-year statute of repose cannot be tolled. *See Obstfeld v. Thermo Niton Analyzers, LLC*, 108 A.D.3d 658 (2d Dep't 2013). Because the same "statute[] of limitations that appl[ies] to primary claims under the 1933 and 1934 Acts also appl[ies] to control person claims," the Section 20(a) claim against Ms. Preston is governed by the same limitations periods. *In re Bibox Grp. Holdings Ltd. Sec. Litig.*, 534 F. Supp. 3d 326, 338 n.4 (S.D.N.Y. 2021). DarkPulse's claims are barred by both limitations periods.

*First*, DarkPulse's claims are barred by the three-year statute of repose, which began to run from the date of the alleged wrong, rather than the date of the discovery of the wrong. *Kahn v. Kohlberg, Kravis, Roberts & Co.*, 970 F.2d 1030, 1039 (2d Cir. 1992). Here, the statute began to run on September 25, 2018 – the date of the SPA and Note – but DarkPulse did not file its claims until January 4, 2022. (Complaint, Exs. 1-2.) Having failed to file within three years of the date of execution, Plaintiff's claims are time-barred. *See Hottinger v. Amcoal Energy Corp.*, 89 Civ. 6391 (LMM), 1992 WL 349851, at *6 (S.D.N.Y. Nov. 10, 1992) (holding statute of limitations began to run upon plaintiff's "execution of a promissory note and accompanying investment documents"); *Kahn*, 970 F.2d at 1040.

*Second*, DarkPulse's claims are also barred by the one-year statute of limitations, which runs from the time that Plaintiff "'could have, through the exercise of reasonable diligence, discovered'" that Defendants were not licensed broker-dealers. *Alpha Capital Anstalt v. Oxysure Systems, Inc.*, 216 F. Supp. 3d at 408. DarkPulse does not allege that it lacked knowledge of

6

Defendants' registration status as broker-dealers. Rather, Defendants' registration (or lack of registration) as broker-dealers has at all relevant times been publicly available. *See Sec. & Exch. Comm'n v. Hansen,* No. 13-CV-1403 (VSB), 2017 WL 1298022, at *6 (S.D.N.Y. Mar. 31, 2017), *aff'd sub nom. United States Sec. & Exch. Comm'n v. Hansen*, 712 F. App'x 99 (2d Cir. 2018) (FINRA's website "maintain[s] registration information for member brokers and make[s] that information available to the public"). Thus, to determine when this statute began to run, courts look at when "'plaintiff learns of the critical <u>facts</u> that he has been hurt and who has inflicted the injury.'" *JD Anderson v. Binance*, 20 Civ. 2803 (ALC), 2022 WL 976824, at *3 (S.D.N.Y. Mar. 31, 2022) (emphasis in original). Notably, DarkPulse pled that its stock's average daily volume significantly increased for the days following EMA Financial's conversions. (Complaint, ¶ 80.) DarkPulse through the exercise of "reasonable diligence" thus could have discovered the alleged violation in September of 2018 or, alternatively, immediately following the conversions that began in April 2019, and failed to file its claim within one year. Thus, whether the Court considers the date of the SPA and Note or the date of the conversions (in 2019 and 2020) as the date on which the injury occurred, DarkPulse's claims are time-barred.

B.    <u>DarkPulse Fails to State a Claim under the Exchange Act</u>

DarkPulse has also failed to state a claim under Section 29(b). DarkPulse contends that the Note should be rescinded because Defendant EMA Financial was acting an unregistered securities dealer. To establish a violation of Section 29(b), Plaintiff "'must show that (1) the contract involved a prohibited transaction, (2) he is in contractual privity with the defendant, and (3) he is in the class of persons the Act was designed to protect.'" *EMA Fin., LLC v. Vystar Corp., Inc.*, 19 Civ. 1545 (ALC) (GWG), 2021 WL 1177801, at *2 (S.D.N.Y. Mar. 29, 2021), *reconsideration denied* 2021 WL 5998411 (S.D.N.Y. Dec. 20, 2021).

7

Neither the SPA nor the Note involved a prohibited transaction. "[O]nly unlawful contracts may be rescinded, not unlawful transactions made pursuant to lawful contracts." *Zerman v. Jacobs*, 510 F. Supp. 132, 135 (S.D.N.Y. 1981), *aff'd*, 672 F.2d 901 (2d Cir. 1981). Neither is a "contract…the performance of which involves the violation of" any provision or regulation under the federal securities laws. Nor is it a "contract made in violation of" any such rule. 15 U.S.C. § 78cc(b). *See LG Cap. Funding, LLC v. ExeLED Holdings, Inc.*, 17 Civ. 4006 (RJS), 2018 WL 6547160, at *5 (S.D.N.Y. Sept. 28, 2018); *Tanzanian Royalty Exploration Corp. v. Crede CG III, Ltd.*, 18 Civ. 4201 (LGS), 2019 WL 1368570, at *13 (S.D.N.Y. Mar. 26, 2019); *Omega Overseas Partners, Ltd. v. Griffith*, 13 Civ. 4202 (RJS), 2014 WL 3907082, at *4–5 (S.D.N.Y. Aug. 7, 2014); *Frati v. Saltzstein*, 10 Civ. 3255 (PAC), 2011 WL 1002417, at *6 (S.D.N.Y. Mar. 14, 2011).

In fact, this Court has already held that a similar SPA and Note involving EMA Financial was "neither made nor performed in violation of any federal securities laws as is required for rescission under Section 29(b)." *EMA Fin., LLC v. Vystar Corp., Inc.*, 2021 WL 1177801, at **2-3. *See also EMA Fin., LLC v. NFusz, Inc.*, 509 F. Supp. 3d 18, 37 n.22 (S.D.N.Y. 2020). Thus, even if "EMA qualified as an unregistered broker or dealer, its status as such would have no bearing on validity of the agreements at issue. That is because nothing in the agreements require EMA to perform an act that would qualify it as a broker or dealer." *Parallax Health Scis., Inc. v. EMA Fin., LLC*, No. 20 Civ. 2375 (LGS) (RWL), 2022 WL 1446521, at *14 (S.D.N.Y. Feb. 24, 2022). Since neither the Note nor SPA required EMA Financial to act as a "dealer," DarkPulse's Section 29(b) and 20(a) claims fail.

In addition, DarkPulse's Exchange Act claims fail because EMA Financial is a private hedge fund and its investment activities do not make it a "broker dealer." Pursuant to Section 3(a)(5)(A), "[t]he term 'dealer' means any person engaged in the business of buying and selling

securities . . . for such person's own account through a broker or otherwise." 15 U.S.C. § 78c(a)(5)(A). A "trader" by contrast, for which there is an exception from the definition of dealer, is a party who "buys and sells securities for his or her own account, either individually or in a fiduciary capacity, but not as part of a regular business." S.E.C., Guide to Broker-Dealer Registration (Apr. 2008). Entities may meet the definition of a dealer by, for example, underwriting or acting as a "market maker" for securities. *Id.* EMA does not engage in any such activities as a "dealer." While the Complaint alleges that Defendants "appear to have actively sold" DarkPulse stock, and allege (on information and belief) that Defendants used proceeds from unspecified sales of other issuers' stock to fund its business (Complaint, ¶¶ 79-80), DarkPulse does not identify even a single sale of stock.

### C.   DarkPulse Fails to Allege Control Person Liability

DarkPulse also has failed to plead a violation of Section 20(a) against Ms. Preston. To state a claim under Section 20(a), a plaintiff must plead "(1) a primary violation by a controlled person; (2) control of the primary violator by the defendant; and (3) that the controlling person was in some meaningful sense a culpable participant in the primary violation." *Lapin v. Goldman Sachs Grp., Inc.*, 506 F. Supp. 2d 221, 244 (S.D.N.Y. 2006) (internal quotation marks omitted). Count III must be dismissed as DarkPulse has failed to allege an underlying Exchange Act violation. *Lapin v. Goldman Sachs Grp., Inc*, 506 F. Supp. 2d at 244–46; Points I.A.–B., *supra*.

DarkPulse also failed to allege that Ms. Preston controlled the "primary violator." *Lapin v. Goldman Sachs Grp., Inc*, 506 F. Supp. 2d at 244–45. DarkPulse alleges that Ms. Preston is a managing member of EMA Group, which is the investment manager of EMA Financial. (Complaint, ¶¶ 27, 30.) DarkPulse then states conclusorily that Ms. Preston "possessed the power and authority to, directly or indirectly, control EMA [Financial's] statements, representations, and

9

decisions due to her power and authority to directly, or indirectly, control EMA Group." (Complaint, ¶ 30.) But Section 20(a) does not extend to "tertiary liability," meaning control over one entity that then allegedly has control over another. *Fezzani v. Bear, Stearns & Co., Inc.*, 384 F. Supp. 2d 618, 646 n.10 (S.D.N.Y. 2004), *on reconsideration in part*, No. 99 Civ 0793 (RCC), 2004 WL 1781148 (S.D.N.Y. Aug. 10, 2004).

DarkPulse also failed to plead Ms. Preston was a "culpable participant" in the alleged primary securities violation. A violation of the relevant provisions of the Exchange Act "contains a state-of-mind condition requiring something more than negligence." *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 209 n.28 (1976). Having failed to allege any scienter, Count III fails.

II

THE COURT SHOULD DISMISS DARKPULSE'S RICO CLAIM

DarkPulse also fails to properly allege a RICO claim. In enacting RICO, the legislative purpose was to eliminate "'the infiltration of organized crime and racketeering into legitimate organizations.'" *Att'y Gen. of Can. v. R.J. Reynolds Tobacco Holdings, Inc.*, 268 F.3d 103, 107 (2d Cir. 2001). Yet in recent years, plaintiffs have attempted to turn "'garden variety' . . . claims" into civil RICO actions because of "the allure of treble damages, attorney's fees, and federal jurisdiction." *Rosenson v. Mordowitz*, 11 Civ. 6145 (JPO), 2012 WL 3631308, at *4 (S.D.N.Y. Aug. 23, 2012); *see also Gross v. Waywell*, 628 F. Supp. 2d 475, 479 (S.D.N.Y. 2009) (surveying civil RICO cases and finding a success rate of 2%). As a result, "plaintiffs wielding RICO almost always miss the mark." *Moss v. BMO Harris Bank, N.A.*, 258 F. Supp. 3d 289, 297 (E.D.N.Y. 2017). The same is true here.

RICO prohibits "any person employed by or associated with any enterprise . . . to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of

6305263-4

racketeering activity or collection of unlawful debt." 18 U.S.C. § 1962(c). DarkPulse does not dispute that, under New York law, a corporate borrower that has paid alleged usurious interest has no remedy against a lender. Under N.Y. G.O.L. § 5-521, "[n]o corporation shall . . . interpose the defense of usury in any action" except in "any action in which a corporation interposes a defense of criminal usury." "It is well established that the statute generally proscribes a corporation from using the usury laws either as a defense to payment of an obligation or, affirmatively, to set aside an agreement and recover the usurious premium. The statutory exception for interest exceeding 25 percent per annum is *strictly* an *affirmative defense* to an action seeking repayment of a loan and may not, as attempted here, be employed as a means to effect recovery by the corporate borrower." *Intima-Eighteen, Inc. v. A.H. Schreiber Co.*, 172 A.D.2d 456, 457-58 (1st Dep't 1991) (internal citations omitted) (emphasis added); N.Y. G.O.L. § 5-521. Here, DarkPulse is attempting to take a claim that lacks any foundation in New York law and bootstrap it into a civil RICO claim. But RICO was intended to create additional remedies for violations of existing laws, not to create a remedy for claims prohibited under state law. DarkPulse's attempts to use the defense of usury to present an affirmative claim against Defendants under RICO should thus fail.

Moreover, where, as here, a plaintiff bases its RICO claim on the collection of an unlawful debt, "a plaintiff must allege that (1) 'the debt was unenforceable in whole or in part because of state or federal laws relating to usury,' (2) 'the debt was incurred in connection with the business of lending money . . . at a [usurious] rate,' and (3) 'the usurious rate was at least twice the enforceable rate.'" *Dae Hyuk Kwon v. Santander Consumer USA*, 742 F. App'x 537, 539 (2d Cir. 2018). The statute further requires that "the 'unlawful debt' be incurred in connection with an illegal 'business.'" *Wade Park Land Holdings, LLC v. Kalikow*, 21 Civ. 1657 (LJL), 2022 WL 657664, at *23 (S.D.N.Y. Mar. 4, 2022). A plaintiff must also show that the alleged unlawful debt was the

11

"'proximate cause'" of its injury, which requires "'some direct relation between the injury asserted and the injurious conduct alleged.'" *Petroff Amshen LLP v. Alfa Rehab PT PC*, No. 21-847, 2022 WL 480475, at *2 (2d Cir. Feb. 17, 2022). Each required element must be alleged "as to each individual defendant," rather than relying on the "collective activities of the members of the enterprise." *DeFalco v. Bernas*, 244 F.3d 286, 306 (2d Cir. 2001). DarkPulse fails to allege any – much less all – of these elements.

A.     Plaintiff Has Not Alleged an Enterprise

DarkPulse's RICO claim fails because the corporate defendants may not be in an "enterprise" by virtue of working with their sole decision maker, Felicia Preston. *Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A.*, 30 F.3d 339 (2d Cir. 1994); *see also U1it4less, Inc. v. Fedex Corp.*, 871 F.3d 199, 206 (2d Cir. 2017).

An entity cannot be both the alleged "enterprise"[3] and the liable "person."[4] It is well-settled that "'the plain language and purpose of the statute contemplate that a <u>person</u> violates the statute by conducting an <u>enterprise</u> through a pattern of criminality,' so 'a corporate person cannot violate the statute by corrupting itself.'" *U1it4less, Inc. v. Fedex Corp.*, 871 F.3d at 205 (emphasis in original). *See also Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A.*, 30 F.3d at 344.

Here, Plaintiff alleges that EMA Financial is the "enterprise" within the meaning of RICO. (Complaint, ¶ 13.) As a result, EMA Financial cannot also be the "person" liable under Section 1962(c). Furthermore, as "[c]orporations can only act through their agents . . . 'a

---

[3] An "enterprise" is defined as "includ[ing] any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4).

[4] A "person" is defined as "includ[ing] any individual or entity capable of holding a legal or beneficial interest in property." 18 U.S.C. § 1961(3).

plaintiff may not circumvent the distinctness requirement by alleging a RICO enterprise that consists merely of a corporate defendant associated with its own employees or agents carrying on the regular affairs of the defendant.'" *Lynn v. McCormick*, 760 F. App'x 51, 53 (2d Cir. 2019). While DarkPulse provides the Court with the legal conclusion that EMA Financial is "an 'enterprise' within the meaning of RICO" (Complaint, ¶¶ 13, 144), the Complaint purports to allege the elements of RICO only as to EMA Financial, not EMA Group or Ms. Preston. (*See, e.g., id.*, ¶¶ 100-08, 142-49); *Lynn v. McCormick*, 17 Civ. 1183 (CS), 2017 WL 6507112, at *5–6 (S.D.N.Y. Dec. 18, 2017) (holding each element of RICO must be alleged as to each defendant), *aff'd*, 760 F. App'x 51 (2d Cir. 2019). Allowing a civil RICO claim to proceed against EMA Group and Ms. Preston, each of whom DarkPulse alleged to be direct or indirect agents for EMA Financial (Complaint, ¶¶ 27, 30, 93-98), would permit DarkPulse a backdoor around this distinctness requirement. DarkPulse's RICO claim must be dismissed on this basis alone.

B.    DarkPulse Has Not Sufficiently Pled "Unlawful Debt" Covered by RICO

DarkPulse also has not adequately pled that the Note is an "unlawful debt" covered by 18 U.S.C. § 1961(6) for at least two reasons.

*First*, the Note does not qualify as "unlawful debt" under RICO because the Note is not usurious on its face. DarkPulse concedes that the Note only bore an interest rate of 8 percent per annum. (Complaint, ¶ 64.) Yet it asserts that the Note charged an interest rate of 73% by adding this 8 percent to a 6 percent original issue discount (modified to 8% based on a nine-month term) and 30 percent conversion discount (which DarkPulse inexplicably converted to a 57% interest rate). (*Id.*, ¶ 68.) However, while the New York Court of Appeals recently held that "stock conversion options should be considered when determining the interest charged on a loan transaction" it did not "endorse any particular methodology" to value stock conversion options,

while noting that "the valuation of a contingent future payment must be tailored to the risks involved in a particular investment." *Adar Bays, LLC v. GeneSYS ID, Inc.*, 37 N.Y.3d 320, 338-39 (2021) ("The hypothetical possibility that a future exercise of a floating-price conversion option may result in a return exceeding 25% does not render a loan usurious on its face. Rather, the value of such an option is a question of fact, and the burden to prove that value is on the borrower."). *See also Adar Bays, LLC v. GeneSYS ID, Inc.*, 28 F.4th 379, 382 (2d Cir. 2022). DarkPulse has not adequately pled that the true value of the conversion feature at signing was equivalent to a 57% interest rate (or any rate that would actually make the Note usurious).[5]

The Note is not usurious on its face. In the event that the uncertainty of potential conversions render it usurious, then this Court should look to Section 10(e) of the SPA (also referenced in Section 4.11 of the Note), and hold that the Note is not "unenforceable" as a result of usury. *See Dae Hyuk Kwon v. Santander Consumer USA*, 742 F. App'x at 539. Section 10(e) provides that: DarkPulse agrees "not to insist upon or plead or in any manner whatsoever claim, and will resist any and all efforts to be compelled to take the benefit or advantage of, usury laws wherever enacted, now or at any time hereafter in force, in connection with any claim, action or proceeding that may be brought by the Purchaser in order to enforce any right or remedy under the Note" and DarkPulse's liability under the Note would be capped at the "maximum contract rate of interest allowed by law," and, if "under any circumstances whatsoever, interest in excess of the

---

[5] In addition, the Note had a 9 month term, with the conversion feature available only in the last 3 months. The additional value from this feature, if there was any, came when DarkPulse failed to pay on maturity, and as such is irrelevant to any usury analysis. *See, e.g.*, *Beaufort Cap. Partners LLC v. Oxysure Sys., Inc.*, No. 16 Civ. 5176 (JPO), 2017 WL 913791, at *3 (S.D.N.Y. Mar. 7, 2017) ("'[T]he defense of usury does not apply where ... the terms of the mortgage and note impose a rate of interest in excess of the statutory maximum only after default or maturity.'"); *1077 Madison Street, LLC v. Daniels*, 954 F.3d 460, 465 (2d Cir. 2020).

Maximum Rate is paid by [DarkPulse] to [EMA Financial] with respect to indebtedness evidenced by the Note, such excess shall be applied by [EMA Financial] to the unpaid principal balance of any such indebtedness or be refunded to [DarkPulse], the manner of handling such excess to be at [EMA Financial's] election." (Complaint, Ex. 1, § 10(e); *see also* Complaint, Ex. 2, § 4.11.) Thus, since the Note was not usurious on its face, and the SPA and Note expressly provide for a remedy in the event that the initial contractual interest rate exceeds an allowable rate – modification of that rate to the maximum allowed by law – it was not usurious. Moreover, the remedy for any amounts that exceeded the maximum allowed by law as a result of the conversion discount would simply be application of any excess paid to the unpaid principal balance of the Note, which would not render the Note unenforceable.

   *Second*, DarkPulse has not alleged that Defendants are in the business of lending at usurious rates. While a RICO offense "'may be predicated on a single instance of collection of an unlawful debt' . . . the statute does not reach the collection of a loan that is made occasionally and not as part of the 'business of lending money' at a usurious rate." *Wade Park Land Holdings, LLC*, 2022 WL 657664, at *23. This provision of RICO is aimed at "'the evils of loan sharking'" and thus excludes "'occasional usurious transactions by one not in the business of loan sharking.'" *Id.* Other than conclusory, non-descript allegations regarding Defendants' business (Complaint ¶¶ 32-33, 108, 146), DarkPulse fails to allege that Defendants are engaged in the business of lending money at a usurious rate. At most, DarkPulse merely alleges that Defendants are a legitimate business that engages in "occasional usurious transactions by one not in the business of loan sharking." *Durante Bros. & Sons, Inc. v. Flushing Nat'l Bank*, 755 F.2d 239, 250 (2d Cir. 1985).

Moreover, DarkPulse only makes the conclusory assertion that EMA Financial "has made loans to other issuers that also violate New York's usury laws" based on "information and belief." (Complaint, ¶ 33; *see also id.*, ¶ 146 (alleging "[u]pon information and belief" that "Defendants enterprise is in the business of making loans at usurious rates"); *see also Cellucci v. O'Leary*, 19 Civ. 2752 (VEC), 2020 WL 977986, at *1 (S.D.N.Y. Feb. 28, 2020) ("Allegations based on 'information and belief' are accepted only if they are non-conclusory and pertain to 'facts [that] are peculiarly within the possession and control of the defendant, or where the belief is based on factual information that makes the inference of culpability plausible.'"). While DarkPulse appears aware of other lending transactions that Defendants entered into (Complaint, ¶ 57), DarkPulse fails to allege that any such transaction was usurious. In fact, this Court has already dismissed such a usury defense against EMA Financial relating to a note governed by Nevada law. *See EMA Fin., LLC v. NFusz, Inc.*, 444 F. Supp. 3d 530 (S.D.N.Y. 2020). Since DarkPulse does not properly plead that Defendants are engaged in the business of lending money at double the legal rate, its RICO claim should be dismissed. *See Durante Bros. & Sons, Inc.*, 755 F.2d at 250; *Contract Transport Servs., Inc. v. New Era Lending LLC*, 17 Civ. 8224 (AT), 2018 WL 11226077, at *6 (S.D.N.Y. Oct. 26, 2018) (dismissing RICO claim with prejudice for "fail[ing] to specify any other individuals or companies to whom Defendants have lent money or the usurious interest rates attached to any other loans made by Defendants").

III

THE COURT SHOULD DISMISS DARKPULSE'S STATE LAW CLAIMS

Because DarkPulse fails to state a single federal claim, "the only remaining basis for this Court's subject matter jurisdiction is diversity jurisdiction under 28 U.S.C. § 1332(a)." *Frati v. Salztein*, 2011 WL 1002417, at *6. However, the parties are not diverse. DarkPulse is

incorporated in Delaware with its principal place of business in New York. EMA Group and EMA Financial are limited liability companies organized under the laws of Delaware, with their principal place of business in New York. Plaintiff alleges that Ms. Preston is a resident of New York and managing member of EMA Group. (Complaint, ¶¶ 21, 23, 25, 29-30.) Thus, the Court lacks diversity jurisdiction, and should decline to exercise supplemental jurisdiction over DarkPulse's claims for unjust enrichment and constructive trust. *See Sadallah v. City of Utica*, No. 383 F.3d 34, 39-40 (2d Cir. 2004) ("[B]ecause plaintiffs no longer have any viable federal claim, any remaining state law claims belong in state, rather than federal, court."); *Acklin v. Eichner*, 20 Civ. 7042 (GHW), 2021 WL 4442819, at *8 (S.D.N.Y. Sept. 27, 2021) ("'[I]f the federal claims are dismissed before trial, . . . the state claims should be dismissed as well.'").

Each of DarkPulse's state law claims also fails to state a claim.

*First*, DarkPulse's claim for unjust enrichment should be dismissed because a contract – the SPA and Note – governs the parties' relationship. *See Clark-Fitzpatrick, Inc. v. Long Island R. Co.*, 70 N.Y.2d 382, 388, 516 N.E.2d 190 (1987) ("The existence of a valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery in quasi contract for events arising out of the same subject matter"); *Metropolitan Elec. Mfg. Co. v. Herbert Constr. Co.*, 183 A.D.2d 758, 759 (2nd Dep't 1992) ("the existence of an express contract between the plaintiff and [the defendant] governing the particular subject matter of its claim for unjust enrichment precludes the plaintiff from maintaining a cause of action sounding in quasi-contract …"). Since DarkPulse's claims for rescission must fail (*see, supra*), there is no basis for it to assert that the SPA and Note are invalid or unenforceable. DarkPulse's claim for unjust enrichment therefore must be dismissed.

*Second*, DarkPulse's claim for constructive trust should be dismissed. The law of the state of incorporation applies where, as here, plaintiff requests a constructive trust be imposed on shares of a corporation. (Complaint, ¶¶ 158-63.) *Moses v. Apple Hospitality Reit Inc.*, 14 Civ. 3131, 2015 WL 1014327, at *4 (E.D.N.Y. Mar. 9, 2015). DarkPulse's state of incorporation is Delaware. (Complaint, ¶ 21.) Under Delaware law, there is no independent cause of action for constructive trust; rather, it is a remedy that may be applied in certain circumstances where other valid claims exist. *See iBio, Inc. v. Fraunhofer USA, Inc.*, No. CV 10256-VCF, 2020 WL 5745541, at *12 (Del. Ch. Sept. 25, 2020); *VGS, Inc. v. Castiel*, No. C.A. 17995, 2003 WL 723285, at *6 (Del. Ch. Feb. 28, 2003); *Teachers' Ret. Sys. of Louisiana v. Aidinoff*, 900 A.2d 654, 671 n.22 (Del. Ch. 2006). That claim should therefore be dismissed. Moreover, the remedy of constructive trust may only be imposed "'when a defendant's fraudulent, unfair or unconscionable conduct causes them to be unjustly enriched at the expense of another to whom he owed some duty.'" *Metro Ambulance, Inc. v. Eastern Medical Billing, Inc.*, No. C.A. 13929, 1995 WL 409015, at *4 (Del. Ch. July 5, 1995). Here, there was no such misconduct, unjust enrichment, or duty.[6]

<u>Conclusion</u>

For the foregoing reasons, Defendants respectfully request that the Court grant their motion in its entirety, and enter an order and judgment dismissing DarkPulse's Complaint for failure to state a claim, and award such other relief as the Court deems just and proper under the circumstances.

---

[6] DarkPulse also has not alleged any of the elements of a claim for constructive trust under New York law: "'(1) a confidential or fiduciary relation, (2) a promise, express or implied, (3) a transfer made in reliance on that promise, and (4) unjust enrichment.'" *Wachovia Sec., LLC v. Joseph*, 56 A.D.3d 269, 271 (1st Dep't 2008).

18

Dated: New York, New York
June 22, 2022

OLSHAN FROME WOLOSKY LLP

By: */s/ Thomas J. Fleming*
Thomas J. Fleming
Kerrin T. Klein
1325 Avenue of the Americas
New York, New York 10019
(212) 451-2300

*Attorneys for Defendants*

6305263-4