UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DARKPULSE, INC.,

                Plaintiff,

   -against-

EMA FINANCIAL, LLC, EMA GROUP, LLC,
and FELICIA PRESTON,

                Defendants.

22 Civ. 00045 (LGS)

---

## REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO DISMISS

---

OLSHAN FROME WOLOSKY LLP
1325 Avenue of the Americas
New York, New York 10019
(212) 451-2300
*Attorneys for Defendants EMA Financial,*
*LLC, EMA Group, LLC and Felicia Preston*

6615313-4

TABLE OF CONTENTS

Page

Preliminary Statement.................................................................................................1

Argument ....................................................................................................................1

    I DARKPULSE'S EXCHANGE ACT CLAIMS SHOULD BE DISMISSED...................1

        A.     DarkPulse's Exchange Act Claims are Time-Barred..................................1

        B.     DarkPulse Fails to State a Claim under the Exchange Act..........................4

    II THE COURT SHOULD DISMISS DARKPULSE'S RICO CLAIM ............................7

        A.     Plaintiff Has Not Stated a RICO Claim against EMA Financial or EMA Group ...................................................................................................7

        B.     DarkPulse Has Not Sufficiently Pled "Unlawful Debt" Covered by RICO ......................................................................................................8

    III THE COURT SHOULD DISMISS DARKPULSE'S STATE LAW CLAIMS ............9

Conclusion ................................................................................................................10

6615313-4

Table of Authorities

Page

CASES

*Adar Bays, LLC v. GeneSYS ID, Inc.*,
   37 N.Y.3d 320 (2021) ..................................................................................................8

*Alpha Cap. Anstalt v. Oxysure Sys., Inc.*,
   216 F. Supp. 3d 403 (S.D.N.Y. 2016)..........................................................................2

*Anderson v. Binance*,
   2022 WL 976824 (S.D.N.Y. Mar. 31, 2022) ............................................................2, 3

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)......................................................................................................6

*Bennett v. U.S. Tr. Co. of New York*,
   770 F.2d 308 (2d Cir. 1985)..........................................................................................6

*Busher v. Barry*,
   2019 WL 6895281 (S.D.N.Y. Dec. 18, 2019) ..............................................................3

*DeStaso v. Bottiglieri*,
   25 Misc. 3d 1213(A), 901 N.Y.S.2d 905 (Sup. Ct. West. Co. 2009) ...........................9

*Eastside Church of Christ, et al. v. National Plan, Inc., et al.*,
   391 F. 2d 357 (5th Cir. 1968) .......................................................................................5

*EMA Fin., LLC v. NFusz, Inc.*,
   509 F. Supp. 3d 18 (S.D.N.Y. 2020).............................................................................5

*EMA Fin., LLC v. Vystar Corp., Inc.*,
   2021 WL 1177801 (S.D.N.Y. Mar. 29, 2021), *reconsideration denied* 2021
   WL 5998411 (S.D.N.Y. Dec. 20, 2021) .......................................................................5

*Found. Ventures, LLC v. F2G, Ltd.*,
   2010 WL 3187294 (S.D.N.Y. Aug. 11, 2010)...............................................................5

*Hendry v. Hendry*,
   2006 WL 1565254 (Del. Ch. May 26, 2006).............................................................10

*Ingenito v. Bermec Corp.*,
   376 F. Supp. 1154 (S.D.N.Y. 1974)..............................................................................4

*Kahn v. Kohlberg, Kravis, Roberts & Co.*,
   970 F.2d 1030 (2d Cir. 1992)....................................................................................3, 4

6615313-4

Table of Authorities
(continued)

Page

*Lawrence v. Richman Grp. of Conn., LLC*,
    407 F. Supp. 2d 385 (D. Conn. 2005)......................................................................................2

*LG Capital Funding, LLC v. ExeLED Holdings, Inc.*,
    2018 WL 6547160 (S.D.N.Y. Sept. 28, 2018)........................................................................5

*Metro Ambulance, Inc. v. Eastern Medical Billing, Inc.*,
    1995 WL 409015 (Del. Ch. July 5, 1995).............................................................................10

*Mills v. Elec. Auto-Lite Co.*,
    396 U.S. 375 (1970)...............................................................................................................5, 6

*Norstar Bank v. Pickard & Anderson*,
    140 A.D.2d 1002 (4th Dep't 1988).........................................................................................9

*Oliver v. Bos. Univ.*,
    2000 WL 1091480 (Del. Ch. July 18, 2000).........................................................................10

*Parallax Health Scis., Inc. v. EMA Fin., LLC*,
    2022 WL 1446521 (S.D.N.Y. Feb. 24, 2022), *report and recommendation
    adopted as modified*, 2022 WL 2531344 (S.D.N.Y. Apr. 7, 2022) ...........................................6

*Pearlstein v. Scudder & German*,
    429 F.2d 1136 (2d Cir. 1970)................................................................................................5, 6

*SEC v. Almagarby*,
    479 F. Supp. 3d 1266 (S.D. Fla. 2020) ...................................................................................4

*U1it4less, Inc. v. Fedex Corp.*,
    871 F.3d 199 (2d Cir. 2017)....................................................................................................7

*UFCW Local 1500 Pension Fund v. Mayer*,
    2016 WL 6122458 (N.D. Cal. Oct. 19, 2016).........................................................................4

*US Airways, Inc. v. Sabre Holdings Corp.*,
    938 F.3d 43 (2d Cir. 2019).......................................................................................................4

*Wachovia Sec., LLC v. Joseph*,
    56 A.D.3d 269 (1st Dep't 2008) ............................................................................................10

*Weiss v. Altholtz*,
    2011 WL 4538459 (N.D. Ill. Sept. 29, 2011) ........................................................................2

6615313-4

Table of Authorities
(continued)

Page

STATUTES

15 U.S.C. § 78cc(b)...................................................................................................................2

18 U.S.C. § 1961(6) .................................................................................................................8

iv

Defendants,[1] by their undersigned attorneys, respectfully submit this memorandum of law

in further support of their motion to dismiss the Complaint pursuant to Rule 12(b)(6) and 12(b)(1).

## Preliminary Statement

Plaintiff, a sophisticated party that regularly uses convertible debt to finance its business,

brought this action asserting a series of meritless claims under the Exchange Act, RICO and state

law. In response to Defendants' motion to dismiss, Plaintiff fails to present a single cogent

argument to support these claims. Plaintiff's unregistered dealer claims are not only meritless, but

also time-barred. The "continuing violation" exception asserted by Plaintiff has no application to

a single contract to sell a note. *See* Point I., *infra*. Plaintiff's attempt to turn its dispute over the

terms of one convertible note into a civil RICO claim is lacking in every element. *See* Point II.,

*infra*. And Plaintiff does not dispute that, if its federal claims are dismissed, this Court has no basis

to retain jurisdiction over its state law claims. *See* Point III., *infra*. Accordingly, for the reasons set

forth in greater detail below and in Defendants' opening Brief, Defendants respectfully request

that the Court grant their motion in its entirety.

## Argument

### I

### DARKPULSE'S EXCHANGE ACT CLAIMS SHOULD BE DISMISSED

This Court should dismiss DarkPulse's Exchange Act claims because those claims are time

barred and DarkPulse fails to state a claim under Section 29(b) of the Exchange Act.

A.    DarkPulse's Exchange Act Claims are Time-Barred

Plaintiff contends that its Exchange Act claims are timely because: (i) Plaintiff's claims are

---

[1] Capitalized but undefined terms shall have the meaning set forth in Defendants' opening Memorandum of Law (the "Brief" or "Br.") (Dkt. No. 40). Plaintiff's Memorandum of Law in Opposition (Dkt. No. 43) shall be referred to as the "Opposition" or "Opp."

governed by a two-year/five-year limitations period, rather than the one-year/three-year period set forth in 15 U.S.C. § 78cc(b); (ii) even if the one-year limitation applied, Defendants have not identified a point at which Plaintiff knew or should have known that Defendants were not registered dealers; and (iii) the continuing violation doctrine applies.

*First*, in our opening Brief, we demonstrated that the Exchange Act's one-year statute of limitations and three-year statute of repose apply to Section 29(b) claims. (Br. at 5-7.)[2] Plaintiff contends that the 2002 Sarbanes-Oxley Act "reset" this period to a "two-year/five-year" limitations period while acknowledging that this alleged re-setting is "unclear." (Opp. at 19-20.) But post-Sarbanes-Oxley courts have consistently held that the Exchange Act's one-year and three-year limitations periods continue to apply to claims pursuant to Section 29(b), including those arising from alleged violations of Section 15(a). *See, e.g.*, *Anderson v. Binance*, 2022 WL 976824, at *3 (S.D.N.Y. Mar. 31, 2022) (holding one-year limitations period with discovery rule applied to Section 29(b) claims); *Alpha Cap. Anstalt v. Oxysure Sys., Inc.*, 216 F. Supp. 3d 403, 408 (S.D.N.Y. 2016) (holding Section 29(b) affirmative defense based on alleged Section 15(a) claim was time-barred one year after "individual 'could have, through the exercise of reasonable diligence, discovered the fraud at issue'"); *see also Weiss v. Altholtz*, 2011 WL 4538459, at *2 (N.D. Ill. Sept. 29, 2011) ("The Exchange Act provides a number of express causes of action, and with one exception, all provide the same statute of limitations period:  1 year after discovery and 3 years after the violation. . . . the 1–and–3–year statutory periods apply to Section 29(b) claims arising from violations of Section 15(a)").

---

[2] The sole case Plaintiff cites for the proposition that this period does not apply to Section 15(a) claims is *Lawrence v. Richman Grp. of Conn., LLC*, 407 F. Supp. 2d 385 (D. Conn. 2005).  In that case, the court held that the statute of limitations did not apply to a Section 29(b) claim when it is raised as an affirmative defense, as opposed to in an "affirmative action[ ] for rescission." *Id.* at 389 n.7.

6615313-4

*Second*, Plaintiff makes the illogical argument that the one-year statute of limitations has not begun to run because Plaintiff could not have discovered that Defendants were allegedly acting as unlicensed broker-dealers. According to Plaintiff, "Defendants have consistently maintained—as they do even now—that they are not dealers and therefore are not required to register." (Opp. at 21.) But to determine when this statute began to run, courts look to when "'plaintiff learns of the critical <u>facts</u> that he has been hurt and who has inflicted the injury.'" *Anderson v. Binance*, 2022 WL 976824, at \*3 (emphasis in original). Here, Plaintiff had all of the "critical facts" in 2018 or, alternatively, by 2020 – namely, that the Note provided EMA with a right of conversion, and that EMA did in fact convert the Note and, allegedly, caused DarkPulse's stock's trading volume to increase significantly immediately following the 2019 and 2020 conversions. (Br. at 6-7.) Moreover, unlike in *Auctus Fund, LLC, v. Players Network, Inc.* (Opp. at 21 and Ex. 1), Plaintiff's Complaint did *not* allege that Defendants ever made "misrepresentations" that "made [Plaintiff] believe that [EMA] was <u>not</u> a dealer and thus not required to register as such." (Opp., Ex. 1 at 18.)[3] And, Plaintiff cites in its Opposition public filings with the SEC dating back to as early as 2015 that Plaintiff alleges show that EMA engaged in several similar convertible transactions. (Opp. at 8 n.8.)

*Third*, the "continuing violation" doctrine does not apply where, as here, the "continuing violation" alleged is the performance of a contract. *See Kahn v. Kohlberg, Kravis, Roberts & Co.*, 970 F.2d 1030, 1040 (2d Cir. 1992) ("[O]nce plaintiff has committed itself to the transaction, the claim accrues and thus the statute begins to run."). Plaintiff's attempt to distinguish *Kahn* is unavailing. (Opp. at 22-23.) *Kahn* applies to any "contract calling for subsequent payments," and

---

[3] Plaintiff's reliance on DPLS's reliance on *Busher v. Barry*, 2019 WL 6895281 (S.D.N.Y. Dec. 18, 2019), is also misplaced. *Busher* involved a shareholder derivative action alleging breach of fiduciary duty, and did not consider claims relating to allegedly unregistered brokers or dealers.

6615313-4

holds that there is no "continuing wrong" if the plaintiff has committed to pay that amount previously. *Kahn*, 970 F.2d at 1040. While Plaintiff claims that "[e]ach conversion and sale constituted an independent act inflicting a new and accumulating injury to DarkPulse and its shareholders" (Opp. at 23), Plaintiff committed to those transactions as of September 2018 when it entered into the Note. *See Kahn*, 970 F.2d at 1040. In fact, Plaintiff could have paid the Note on its maturity but chose not to. There is no question Plaintiff committed itself to these transactions in 2018; thus, there is no "continuing violation" that extends the three-year statute of repose.

Each of the cases cited by Plaintiff is inapposite, or actually supports Defendants' argument. (Opp. at 22-23 (citing *SEC v. Almagarby*, 479 F. Supp. 3d 1266 (S.D. Fla. 2020) (rejecting argument that SEC claim for disgorgement accrued when defendant first began his business where "some [ ] violative conduct occurred within the limitations period"); *UFCW Local 1500 Pension Fund v. Mayer*, 2016 WL 6122458 (N.D. Cal. Oct. 19, 2016) (defendant entered into allegedly illegal contracts every year); *Ingenito v. Bermec Corp.*, 376 F. Supp. 1154 (S.D.N.Y. 1974) ("Each payment [on the promissory note] represented not the creation or assumption of new obligations, but the fulfillment of those previously created."); *US Airways, Inc. v. Sabre Holdings Corp.*, 938 F.3d 43 (2d Cir. 2019) ("We thus conclude that . . . the prior overt act of entering into the 2006 contract . . . began the running of the statute of limitations . . . .")).)

B.     DarkPulse Fails to State a Claim under the Exchange Act

Plaintiff's arguments that it sufficiently pled a claim under the Exchange Act also fail.

*First*, Plaintiff has not pled a prohibited transaction. In arguing that the Note and SPA were "made in violation of" and require "performance" that would violate Section 15(a) of the Exchange Act, Plaintiff is unable to distinguish the clear case law cited by Defendants.

Plaintiff attempts to distinguish *EMA Fin., LLC v. Vystar Corp., Inc.*, 2021 WL 1177801,

at *2 (S.D.N.Y. Mar. 29, 2021), *reconsideration denied* 2021 WL 5998411 (S.D.N.Y. Dec. 20,

2021), by claiming that a provision in the SPA here that required EMA to purchase the Note was

not present in the *Vystar* matter and requires EMA to act as a dealer. (Opp. at 14.) However, that

provision does *not* "explicitly require" EMA to act as a dealer. *Found. Ventures, LLC v. F2G, Ltd.*,

2010 WL 3187294, at *7 (S.D.N.Y. Aug. 11, 2010). Moreover, the assertion that this clause was

absent in *Vystar* is patently false, as the *Vystar* agreement contained a nearly identical provision

requiring EMA to "purchase from the Company, the Note." (Reply Declaration of Kerrin T. Klein,

dated July 22, 2022, Ex. A at § 1(a).)[4]

Unable to show that performance of the Note or SPA involved a violation of the Exchange

Act, Plaintiff focuses much of its argument on its claim that the SPA and Note were "made in

violation" of the Exchange Act. (Opp. at 12-16.) In doing so, Plaintiff relies on a Fifth Circuit case

from 1968, which has already been rejected as support for such an argument by other Courts in

this District. (Opp. at 15 (citing *Eastside Church of Christ v. National Plan, Inc.*, 391 F.3d 357

(5th Cir. 1968)); *EMA Fin., LLC v. NFusz, Inc.*, 509 F. Supp. 3d 18, 37 n.22 (S.D.N.Y. 2020)

("NFusz's reliance on Fifth Circuit precedents, which are not binding on this Court, is of no

assistance to NFusz. *Cf. Eastside Church of Christ, et al. v. National Plan, Inc., et al.*, 391 F. 2d

357, 362 (5th Cir. 1968)").[5] The overwhelming case law shows that Plaintiff cannot establish that

---

[4] Plaintiff also misconstrues *Vystar* and *LG Capital Funding, LLC v. ExeLED Holdings, Inc.*, 2018 WL 6547160 (S.D.N.Y. Sept. 28, 2018) in erroneously arguing that those cases construed the contracts at issue as "brokerage services contracts." (Opp. at 16 n. 15.)

[5] Plaintiff's reliance on *Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375 (1970) and *Pearlstein v. Scudder & German*, 429 F.2d 1136 (2d Cir. 1970) also should be rejected. *Mills* involved a merger where shareholders alleged the proxy was materially false and misleading. 396 U.S. at 378–79. The issue for the Supreme Court was whether plaintiffs had shown that this disclosure violation caused their injury. The Supreme Court held that causation was sufficiently shown but made no ruling as to the appropriate remedy. *Id.* at 385-86. *Pearlstein* held that plaintiff's claim

5

the SPA and Note were made *or* performed in violation of the Exchange Act, and thus do not involve any prohibited transaction. (*See* Br. at 7-9.) *See also Parallax Health Scis., Inc. v. EMA Fin., LLC*, 2022 WL 1446521, at *14 (S.D.N.Y. Feb. 24, 2022), *report and recommendation adopted as modified*, 2022 WL 2531344 (S.D.N.Y. Apr. 7, 2022) (rejecting argument that convertible note agreement with EMA was void "as made" based on EMA's alleged status as an "unregistered broker or dealer" since the agreements did not "require EMA to perform by selling the stock it obtains from conversion or to otherwise act as a broker or dealer").

*Second*, Plaintiff has not adequately pled that EMA is a dealer.[6] Plaintiff's allegations relating to EMA's status as an alleged dealer are conclusory and/or made on information and belief. (*See, e.g.*, Complaint, ¶¶ 37, 43, 48-49, 54, 79-80.) Those allegations are not sufficient to state a claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

*Third*, Plaintiff fails to allege control person liability against Ms. Preston. Plaintiff does not dispute that, absent a primary violation, there can be no control person liability. For that reason alone, Plaintiff's claim against Ms. Preston fails. The claim also fails because: (i) Ms. Preston allegedly controlled EMA Financial *through* its investment manager, EMA Group, which makes her alleged control of EMA Financial "tertiary" and not actionable (Br. at 9-10); and (ii) Plaintiff failed to plead with particularity that Ms. Preston was a "culpable participant" in the alleged

---

under Section 7 of the Exchange Act was not barred by two settlement agreements, as those agreements "resulted in a continuation of credit in violation of Regulation T, and under Section 29(b)." 429 F.2d at 1142. Those agreements obligated "plaintiff [to] pay if defendant extended further credit" and thus were "void" under Section 29(b). *Id. Pearlstein* also held that plaintiffs have a private right of action under Section 7, which was later overturned by *Bennett v. U.S. Tr. Co. of New York*, 770 F.2d 308, 313 (2d Cir. 1985).

[6] Plaintiff also takes issue with the fact that "Defendants do not deny that EMA promptly sells [ ] newly-issued stock." (Opp. at 17 n. 18.) Plaintiff appears to forget that this is a pleadings motion, and any such denial would be premature.

primary securities violation based on its conclusory allegations that she "did not act in good faith" (Complaint, ¶ 139) and knew based on her brief stint as a registered broker that EMA was "required to register as a dealer" (Complaint, ¶¶ 31, 96-97).

II

<u>THE COURT SHOULD DISMISS DARKPULSE'S RICO CLAIM</u>

Plaintiff does not dispute the high bar for pleading a RICO claim. Nor can it dispute that its attempt to plead a RICO claim is an end-run around New York law, which provides that a corporate borrower (like Plaintiff) that has paid allegedly usurious interest has no affirmative claims against a lender. (Br. at 11.) Instead, Plaintiff makes a series of meritless arguments in support of its claim.

A. <u>Plaintiff Has Not Stated a RICO Claim against EMA Financial or EMA Group</u>

Plaintiff argues that it sufficiently alleged that EMA Financial is an "enterprise" and EMA Group and Mr. Preston are control persons. (Opp. at 9-12.) This contention spells the end for Plaintiff's RICO claim against EMA Financial. It is well established that "the same entity cannot be <u>both</u> the RICO person and the enterprise" and only the "RICO person" may be held liable. *U1it4less, Inc. v. Fedex Corp.*, 871 F.3d 199, 205 (2d Cir. 2017) (emphasis in original). Since Plaintiff claims that EMA Financial is the "enterprise," its claim should be dismissed against EMA Financial.

Plaintiff's claim also fails as to EMA Group. Plaintiff offers only conclusory allegations about EMA Group. In fact, only 7 paragraphs of Plaintiff's 163 paragraph Complaint mention EMA Group at all, and another 4 paragraphs mentioned EMA Group only when lumped together with Ms. Preston as the "EMA Managers." (Complaint, ¶¶ 14, 26-28, 30, 94, 99, 143, 145, 147, and n.1.) Those paragraphs merely identify EMA Group and its alleged relationship to the other

7

Defendants, and conclusorily allege liability. Plaintiff's claim also fails because it has not alleged that EMA Group is distinct from the alleged enterprise, EMA Financial. (Br. at 12-13.)

        B.        <u>DarkPulse Has Not Sufficiently Pled "Unlawful Debt" Covered by RICO</u>

        Plaintiff's arguments that it sufficiently pled that the Note is "unlawful debt" covered by 18 U.S.C. § 1961(6) also fail.

        *First*, Plaintiff points to certain paragraphs of the Complaint to assert that it adequately alleged that Defendants are in the business of lending at usurious rates. (Opp. at 8.) While those paragraphs mention other transactions that Defendants allegedly engaged in, they do not identify a single other allegedly *usurious* transaction, never mind one usurious under New York law. In fact, only one of the cited paragraphs mentions usury at all, and it merely states, in conclusory fashion, that Defendants engaged in "many" unspecified other transactions that were "usurious." (Complaint, ¶ 108.) That is not sufficient. Nor are the notes cited by Plaintiff for the first time in its Opposition brief sufficient to state a claim. (Opp. at 8 n.8.) Among other issues, those notes, like the Note at issue here, are not usurious on their face.

        *Second*, Plaintiff has not alleged that the "true" interest rate of the Note was over 50%. Even assuming that Plaintiff has alleged a rate of 16% interest by adding the stated APR to the alleged original issue discount, it has provided no basis to assert that the 30% conversion discount provided for additional interest rate of over 34%. As the New York Court of Appeals has held, "[t]he hypothetical possibility that a future exercise of a floating-price conversion option may result in a return exceeding 25% does not render a loan usurious on its face. Rather, the value of such an option is a question of fact, and the burden to prove that value is on the borrower." *Adar Bays, LLC v. GeneSYS ID, Inc.*, 37 N.Y.3d 320, 334 (2021). Here, the borrower has not adequately pled that the true value of the conversion feature at signing was greater than a 34% interest rate.

6615313-4

The Note has a nine-month term, with conversions permitted only in the last 90 days.

Moreover, since the Note is not usurious on its face, Section 10(e) of the SPA is valid as a "usury savings clause." *See, e.g.*, *Norstar Bank v. Pickard & Anderson*, 140 A.D.2d 1002, 1003 (4th Dep't 1988) (for a variable rate loan, "the bank could have readily avoided charging usurious interest on its loan by placing a cap on the charges for interest so that no payment would exceed the variable legal rate"). As the Court explained in *DeStaso v. Bottiglieri*, 25 Misc. 3d 1213(A), 901 N.Y.S.2d 905 (Sup. Ct. West. Co. 2009), "In regard to the enforceability of usury savings clauses . . . In the case of a variable rate loan, however, such a clause may be necessary; while a loan agreement may not be usurious on its face at the inception of the loan, there may be a usury problem if the rate of interest should exceed the usury ceiling during the term of the loan even though the lender would have no way of knowing whether this would eventually happen." Here, the savings clause provides that if any amount is received in excess of usury limits, it may be applied to principal.

III

THE COURT SHOULD DISMISS DARKPULSE'S STATE LAW CLAIMS

Plaintiff does not dispute that its state law claims should be dismissed for lack of jurisdiction if this Court dismisses its federal claims. Nor does Plaintiff dispute that its unjust enrichment claim fails if this Court finds that there is no basis to invalidate the Note and SPA. Instead, Plaintiff argues that the Note and SPA are void. But, as discussed in detail above and in Defendants' opening Brief, there is no basis to hold that Note or SPA are void or unenforceable.

Plaintiff also implies that Delaware law may not apply to its constructive trust claim because Plaintiff is not only seeking a trust on shares of its stock. (Opp. at 24.) But Plaintiff concedes that at least *part* of its claim is for a trust over such stock (*id.*), and its Complaint makes

9

clear that what it seeks is a trust over the "property conferred on [Defendants] by DarkPulse" –

*i.e.*, the stock. (Complaint, ¶¶ 162-63 and p. 33.) Moreover, Plaintiff's assertion that a constructive

trust claim can exist under Delaware law is unsupported by its cases. (Opp. at 24-25 (citing *Oliver*

*v. Bos. Univ.*, 2000 WL 1091480, at *9-10 (Del. Ch. July 18, 2000) (upholding claim for *unjust*

*enrichment* that sought remedy of constructive trust); *Hendry v. Hendry*, 2006 WL 1565254, at

*10-12 (Del. Ch. May 26, 2006) (not considering whether a constructive trust is an independent

cause of action, but rather analyzing a claim for "imposition of a constructive trust, trespass and

unjust enrichment")); *see also* Br. at 18 (collecting cases for the proposition that constructive trust

is a remedy and not an independent cause of action under Delaware law).) Nor has Plaintiff

demonstrated that the *remedy* of constructive trust would be appropriate under Delaware law

because it did not allege "fraudulent, unfair or unconscionable conduct cause[d Defendants] to

be unjustly enriched at the expense of another to whom [they] owed some duty.'" *Metro*

*Ambulance, Inc. v. Eastern Medical Billing, Inc.*, 1995 WL 409015, at *4 (Del. Ch. July 5, 1995).

Such a claim also would fail under New York law as Plaintiff has not alleged "'(1) a confidential

or fiduciary relation, (2) a promise, express or implied, (3) a transfer made in reliance on that

promise, and (4) unjust enrichment.'" *Wachovia Sec., LLC v. Joseph*, 56 A.D.3d 269, 271 (1st

Dep't 2008).

Conclusion

For the foregoing reasons, and those set forth in Defendants' opening Brief, the Court

should grant Defendants' motion to dismiss in its entirety.

10

6615313-4

Dated: New York, New York
       July 22, 2022

OLSHAN FROME WOLOSKY LLP


By:   */s/ Thomas J. Fleming*
      Thomas J. Fleming
      Kerrin T. Klein
      1325 Avenue of the Americas
      New York, New York 10019
      (212) 451-2300

      *Attorneys for Defendants*

11

6615313-4