# Exhibit F

  Neutral
As of: October 12, 2022 7:30 PM Z

## New Y-Capp v. Arch Cap. Funding, LLC

United States District Court for the Southern District of New York

September 30, 2022, Decided; September 30, 2022, Filed

18-cv-3223 (ALC)

**Reporter**
2022 U.S. Dist. LEXIS 180309 *; 2022 WL 4813962

THE NEW Y-CAPP, ET AL., Plaintiffs, -against- ARCH CAPITAL FUNDING, LLC, et al., Defendants.

**Prior History:** *New Y-Capp, Inc. v. Arch Capital Funding, LLC, 2019 U.S. Dist. LEXIS 168683, 2019 WL 4805897 (S.D.N.Y., Sept. 27, 2019)*

## Core Terms

collection, Enterprise, reconciliation, motion to dismiss, lender, merchant, borrower, funds, bank account, res judicata, state court, receivables, ownership, default, loans

**Counsel:** **[*1]** For The New Y-Capp, Inc., Jonathan Eugene Coleman, Donna Zemoria Pierce-Baylor, Radiant Images, Inc., Gianna Wolfe, Plaintiffs: Shane R. Heskin, White & Williams, LLP(Philadelphia), Philadelphia, PA.

For Arch Capital Funding, LLC, MCA Recovery, LLC, Defendants: Gabriel Mendelberg, LEAD ATTORNEY, Mendelberg PC, New York, NY.

For High Speed Capital, LLC, Yellowstone Capital, LLC, Yellowstone Capital West, LLC, Defendants: David A. Picon, Matthew Jerome Morris, LEAD ATTORNEYS, Proskauer Rose LLP (NYC), New York, NY.

For Yitzhak D. Stern, Defendant: Joseph Barbiere, LEAD ATTORNEY, Cole Schotz Meisel Forman & Leonard, P.A. (NJ), Hackensack, NJ; Jason Robert Finkelstein, Cole Schotz P.C., New York, NY.

Avraham Y. Weinstein, Defendant, Pro se.

**Judges:** ANDREW L. CARTER, JR., United States District Judge.

**Opinion by:** ANDREW L. CARTER, JR.

## Opinion

**OPINION AND ORDER**

**ANDREW L. CARTER, JR., United States District Judge**:

Plaintiffs bring this suit against Defendants, a group of merchant cash advance ("MCA") companies, and various executives at these MCAs, alleging violating of the Racketeer Influenced and Corrupt Organization Act ("RICO"), *18 U.S.C. § 1962*, conspiracy in violation of *18 U.S.C. § 1962(d)*, and wrongful execution.

The Court assumes familiarity with the facts **[*2]** of this case, as set forth in its September 29, 2019 and September 16, 2020 Opinions, denying Defendants' motions to dismiss and granting Plaintiffs leave to amend. The Court recites facts relevant to the motion. Defendants now move to dismiss Plaintiffs' Third Amended Complaint ("TAC").

**LEGAL STANDARD**

When resolving a motion to dismiss under *Federal Rule of Civil Procedure 12(b)(6)*, a court should "draw all reasonable inferences in [the plaintiff's] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber v. Metro. Life Ins. Co., 648 F.3d 98, 104 (2d Cir. 2011)* (internal quotation marks and citations omitted). Thus, "[t]o survive a motion to dismiss [under *Rule 12(b)(6)*], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)* (quoting *Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)*). However, the court need not credit "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ashcroft, 556 U.S. at 678* (citing

Case 1:22-cv-00045-LGS   Document 46-6   Filed 10/12/22   Page 3 of 7

Page 2 of 6
2022 U.S. Dist. LEXIS 180309, *2

Twombly, 550 U.S. at 555).

The Court's function on a motion to dismiss is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." Goldman v. Belden, 754 F.2d 1059, 1067 (2d Cir. 1985). Additionally, "[a]lthough the statute of limitations is ordinarily **[*3]** an affirmative defense that must be raised in the answer, a statute of limitations defense may be decided on a Rule 12(b)(6) motion if the defense appears on the face of the complaint." Thea v. Kleinhandler, 807 F.3d 492, 501 (2d Cir. 2015) (internal quotation marks and citations omitted).

"A court may consider a res judicata defense on a Rule 12(b)(6) motion to dismiss when the court's inquiry is limited to the plaintiff's complaint, documents attached or incorporated therein, and materials appropriate for judicial notice." TechnoMarine SA v. Giftports, Inc., 758 F.3d 493, 498 (2d Cir. 2014). Indeed, when a motion to dismiss is premised on this doctrine, the court may take judicial notice of the complaints and record in both actions without having to convert to summary judgment motion. McKoy v. Henderson, No. 05 Civ. 1535, 2007 U.S. Dist. LEXIS 15673, 2007 WL 678727, at *6 (S.D.N.Y. Mar 5, 2007).

**DISCUSSION**

Defendants argue that Plaintiffs claims should be dismissed because (1) their claims are barred under the doctrine of res judicata and (2) they fail to plausibly plead the elements of their Rico claims.

**I. Res Judicata and the *Rooker-Feldman* Doctrine**

The *Rooker-Feldman* doctrine requires this Court to abstain from exercising subject matter jurisdiction over state court final judgments. Because the existence of subject matter jurisdiction is a threshold question, the Court must resolve jurisdictional issues before delving into the merits **[*4]** of a dispute. *See* McCrory v. Administrator of Federal Emergency Management Agency of U.S. Dept. of Homeland Sec., 22 F. Supp. 3d 279, 286-87 (S.D.N.Y. 2014). "Underlying the *Rooker-Feldman* doctrine is the principle, expressed by Congress in 28 U.S.C. § 1257, that within the federal judicial system, only the Supreme Court may review state-court decisions." Green. v. Mattingly, 585 F.3d 97, 101 (2d Cir. 2009) (quoting Hoblock v. Albany County Bd. of Elections, 422 F.3d 77, 85 (2d Cir. 2005)). For the *Rooker-Feldman* doctrine to apply, four requirements must be met: "(1) the federal-court plaintiff must have lost in state court; (2) the plaintiff must complain of injuries cause by a state-court judgment; (3) the plaintiff must invite district court review and rejection of that judgment; and (4) the state-court judgment must have been rendered before the district court proceedings commenced." Sung Cho v. City of New York, 910 F.3d 639, 644-45 (2d Cir. 2018).

Res Judicata operates in a fashion similar to that of the *Rooker-Feldman* doctrine "Under the doctrine of *res judicata*, '[a] final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action.'" Saud v. Bank of New York, 929 F.2d 916, 918-19 (2d Cir.1991) (quoting Federated Dep't Stores, Inc. v. Moitie, 452 U.S. 394, 398, 101 S. Ct. 2424, 69 L. Ed. 2d 103 (1981)). To determine the preclusive effect of a prior judgment, district courts consider: "whether the same transaction or connected series of transactions is at issue, whether the same evidence is needed to support both claims, and whether the facts essential to the second were present **[*5]** in the first." N.L.R.B. v. United Techs. Corp., 706 F.2d 1254, 1260 (2d Cir.1983).

The judgment at issue in this action is a confessed judgment filed by Defendants in New York state courts. Contrary to Defendants' contentions, the state action has no preclusive effect on the current case. The judgment stems from one transaction between one of the defendants and plaintiffs; in a plenary action filed in state court, plaintiffs claim that the transaction, forming the basis of the judgment, is a usurious loan and the judgment was obtained by filing a false affidavit. Plaintiffs did not initiate this suit to attack the confessed judgment. Plaintiffs' suit is premised on the theory that Defendants' scheme is violative of the federal RICO statute. Whereas the state action is concerned with the enforcement of the confessed judgment authored by the Defendants, this action challenges the legality of Defendants' operations, not the consent judgment itself. Since the plaintiffs claims "speak not to the propriety of the state court judgments, but to the fraudulent course of conduct that defendants pursued in obtaining such judgments," *Rooker-Feldman* does not apply. Sykes v. Mel S. Harris & Assocs. LLC, 780 F.3d 70, 94-95 (2d Cir. 2015).

Accordingly, the Court finds that the state action has no preclusive effect on this action. *See,* **[*6]** *e.g.,* Cho, 910 F.3d at 647 (finding no abstention under *Rooker-*

Case 1:22-cv-00045-LGS   Document 46-6   Filed 10/12/22   Page 4 of 7

Page 3 of 6
2022 U.S. Dist. LEXIS 180309, *6

*Feldman* where "state-court judgments were a mere ratification of the harm allegedly caused by defendants.).

## II. RICO Claim

Section 1964(c) creates a private right of action for RICO violations. 18 U.S.C. § 1964(c). The RICO statute provides that it is "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." *18 U.S.C. § 1962(c)*.

To state a civil RICO claim, the plaintiff must allege: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity" or "through . . . collection of unlawful debt." *Lateral Recovery LLC v. Queen Funding, LLC, No. 21-cv-9607 (LGS), 2022 U.S. Dist. LEXIS 129032, 2022 WL 2829913, at \*2 (S.D.N.Y. July 20, 2022)* (quoting *18 U.S.C. § 1962(c)*). "[U]nlike a 'pattern of racketeering activity' which requires proof of two or more predicate acts, to satisfy RICO's 'collection of unlawful debt' definition the [plaintiff] need only demonstrate a single collection." *Fleetwood Servs., LLC v. Ram Cap. Funding LLC, No. 20-cv-5120 (LJL), 2021 U.S. Dist. LEXIS 94381, 2021 WL 1987320, at \*3 (S.D.N.Y. May 18, 2021)* (citing *United States v. Giovanelli, 945 F.2d 479, 490 (2d Cir. 1991)*).

Defendants principally argue that Plaintiffs have not sufficiently pleaded the existence of an enterprise or the collection of unlawful debt.

### A. Existence of An Enterprise

Defendants argue [*7] that Plaintiffs' RICO claims fail because they do not plead that Yellowstone and its affiliates are separate entities. Consequently, they argue, Plaintiffs have not pleaded the existence of a person and an enterprise. This argument is without merit. Although the TAC alleges that members of the enterprise have some ownership overlap, the TAC notes several distinct entities with separate ownership and control:

> • **Defendant Stern** "is an owner and the Chief Executive Officer of HSC, Yellowstone and YCW. Stern is responsible for the day-to-day operations of the Enterprise and has final say on all business decisions of the Enterprise including, without limitation, which usurious loans the Enterprise will fund, how such loans will be funded, which of Investors will fund each loan and the ultimate payment terms, amount and period of each usurious loan, including the loans extended to Y-CAPP, Radiant and the Class Members." TAC ¶483. Stern "has a controlling ownership interest in HSC, YCW, and Yellowstone, and is the Chief Executive Officer of HSC, YCW and Yellowstone." TAC ¶ 472.

> • **Defendant MCA Recovery** "provides legal services to the Enterprise and collects upon the debts of the Enterprise. [*8] Yellowstone has a partial ownership interest in MCA Recovery. On information and belief, Arch also has a partial ownership interest in MCA Recovery." TAC ¶ 473

> • **Defendant Arch** "is organized under the laws of New York and maintains officers, books, records, and bank accounts independent of HSC, YCW, Yellowstone and MCA Recovery." TAC ¶ 499. "Arch solicits, underwrites, funds, services and collects upon lawful debt incurred by small businesses in states that do not have usury laws." TAC ¶ 474. "Arch: (i) pooled funds from Investors to fund the Agreements; (ii) underwrote the Agreements; (iii) entered into the Agreements; and (iv) collected upon the unlawful debt evidenced by the Agreements by effecting daily ACH withdrawals from the bank accounts of Y-CAPP' and the Class Members." *Id.* ¶ 501. "Arch ultimately benefits from the Enterprise's unlawful activity by receiving a management fee from the proceeds of the unlawful debt from the Enterprise's funneling of the usurious loan proceeds and to the Investors of the deals in which, upon information and belief, Arch has directly participated." *Id.* ¶ 502.

> • **Defendant HSC** "is organized under the laws of New York and maintains officers, books, [*9] records, and bank accounts independent of Arch, YCW Yellowstone and MCA Recovery." TAC ¶ 495. HSC solicits, underwrites, funds, services and collects upon lawful debt incurred by small businesses in states that do not have usury laws. TAC ¶ 475.

> • **Defendant Yellowstone** "is organized under the laws of New York and maintains officers, books, records, and bank accounts independent of Arch,

Case 1:22-cv-00045-LGS   Document 46-6   Filed 10/12/22   Page 5 of 7

Page 4 of 6
2022 U.S. Dist. LEXIS 180309, *9

HSC, YCW and MCA Recovery." TAC ¶ 487. "Yellowstone solicits, underwrites, funds, services and collects upon lawful debt incurred by small businesses in states that do not have usury laws." TAC ¶ 476.

• **Defendant YCW** "is organized under the laws of New York and maintains officers, books, records, and bank accounts independent of Arch, HSC, Yellowstone and MCA Recovery." TAC ¶ 491. "YCW solicits, underwrites, funds, services and collects upon lawful debt incurred by small businesses in states that do not have usury laws." TAC ¶ 477.
• The TAC also makes several claims against John and Jane Doe defendants.

B. Unlawful Debt

Defendants also argue that Plaintiffs do not sufficiently plead the collection of unlawful debt. They contend that the MCAs are not loans and thus cannot be said to be usurious. "RICO defines **[*10]** "unlawful debt" as a debt (A) 'which is unenforceable under State or Federal law in whole or in part as to principal or interest because of the laws relating to usury,' and (B) 'which was incurred in connection with . . . the business of lending money or a thing of value at a rate usurious under State or Federal law, where the usurious rate is at least twice the enforceable rate. . . .'" *Lateral Recovery LLC, 2022 U.S. Dist. LEXIS 129032, 2022 WL 2829913, at *4* (quoting *18 U.S.C. § 1961(6)*).

The essential element of usury is the existence of a loan or forbearance of money. *See Colonial Funding Network, Inc. for TVT Capital, LLC v. Epazz, Inc., 252 F. Supp. 3d 274, 280 (S.D.N.Y. 2017)* ("*TVT Capital*") (quoting *Feinberg v. Old Vestal Rd. Assocs., 157 A.D.2d 1002, 1003, 550 N.Y.S.2d 482, 483 (3d Dep't 1990)*). Without a loan, "'there can be no usury, however unconscionable the contract may be.'" *TVT Capital, 252 F. Supp. 3d at 280* (quoting *Seidel v. 18 E. 17th St. Owners, Inc., 79 N.Y.2d 735, 744, 598 N.E.2d 7, 11-12, 586 N.Y.S.2d 240, 244-45 (1992)*). Determining usury is a question of fact. *Id.* (citing *Ujueta v. Euro-Quest Corp., 29 A.D.3d 895, 896, 814 N.Y.S.2d 551 (2006)*).

To constitute a loan, the transaction must involve a borrower and a lender. *See TVT Capital, 252 F. Supp. 3d at 281*. Furthermore, the lender must have purposefully loaned money at a usurious interest reserved in some form by the contract, and the borrower must have agreed to these usurious terms. *Id.; see also Donatelli v. Siskind, 170 A.D.2d 433, 434, 565 N.Y.S.2d 224, 226 (2d Dep't 1991)*. Thus, courts must determine a transaction's purpose by its true character, under all circumstances, rather than its title. *Kelly, Grossman & Flanagan, LLP v. Quick Cash, Inc., 35 Misc.3d 1205[A], 950 N.Y.S.2d 723, 2012 NY Slip Op 50560[U], 2012 WL 1087341, at *6 (Sup. Ct. 2012)*; *see also Ujueta v. Euro-Quest Corp., 29 A.D.3d 895, 814 N.Y.S.2d 551 (2d Dep't 2006)*.

"[W]hen determining whether a transaction was a true sale of receivables or a loan, "[t]he root of [the analysis] **[*11]** is the transfer of risk. Where the lender has purchased the accounts receivable, the borrower's debt is extinguished and the lender's risk with regard to the performance of the accounts is direct, that is, the lender and not the borrower bears the risk of non-performance by the account debtor." *Lateral Recovery LLC, 2022 U.S. Dist. LEXIS 129032, 2022 WL 2829913, at *4* (quoting *Endico Potatoes, Inc. v. CIT Grp./Factoring, Inc., 67 F.3d 1063, 1069 (2d Cir. 1995)*). "Courts have considered, among others, the following three factors to analyze who bears the ultimate risk that the borrower's customers will not pay: (1) whether there is a reconciliation provision; (2) whether the agreement has an indefinite term and (3) whether the lender has any recourse should the merchant declare bankruptcy." *Lateral Recovery LLC, 2022 U.S. Dist. LEXIS 129032, 2022 WL 2829913, at *4 (S.D.N.Y. July 20, 2022)* (citing *LG Funding, 122 N.Y.S.3d at 312*

*Reconciliation Provision*. Plaintiffs allege that the reconciliation provision exists in name only. They contend that the MCAs are structured so that businesses are led to believe they have a right to reconciliation. In practice, however, Defendants constructed a number of obstacles to call on the reconciliation provision:
> [S]ome of the reconciliation clauses provide that reconciliations will occur at the funders' "sole discretion."
>
> Others provide that, should the merchant fail to submit certain documentation related to reconciliation to the funder **[*12]** on just a single month, that the merchant forfeits the right to *ever* request a subsequent reconciliation.
>
> All, or almost all, of the reconciliation provisions provide no right to have the Daily Payment reduced *prospectively*, no matter how much a merchant's receivables fall.

Case 1:22-cv-00045-LGS   Document 46-6   Filed 10/12/22   Page 6 of 7

Page 5 of 6
2022 U.S. Dist. LEXIS 180309, *12

TAC ¶¶ 135-37.

*Indefinite Nature of Agreement*. "A fixed term is typical of a loan, while an indefinite term of receiving a fixed percentage of actual receipts may suggest that the lender has assumed the risk associated with the receivables not being collectable. *Lateral Recovery LLC, No. 21-cv-9607 (LGS), 2022 U.S. Dist. LEXIS 129032, 2022 WL 2829913, at \*6 (S.D.N.Y. July 20, 2022)* (citing *Fleetwood Servs., 2022 U.S. Dist. LEXIS 100837, 2022 WL 1997207, at \*9* ("If the term is indefinite, then it is consistent with the contingent nature of each and every collection of future sales proceeds under the contract.")).

Here, Plaintiffs allege that "members of the Enterprise frequently refer to the MCA Agreements as having fixed terms and, in most cases, fixed daily or weekly repayment obligations." TAC ¶ 100. They further allege that Defendants promotion of the MCAs, read in context, point to a fixed term agreement. The TAC notes that one conversation with a member of the alleged RICO enterprise called the potential agreement "a long deal" in his efforts to induce consent.

*Lender Recourse in Event of Bankruptcy* **[\*13]** . "If the merchant's bankruptcy triggers a default, this factor would weigh in favor of finding the agreement to be a loan because it would suggest that the lender has not assumed the risk of loss of not collecting on the receivables, but instead is relying on the creditworthiness of the borrower to be repaid." *Lateral Recovery LLC, 2022 U.S. Dist. LEXIS 129032, 2022 WL 2829913, at \*6 (S.D.N.Y. July 20, 2022)* (citing *Fleetwood Servs., 2022 U.S. Dist. LEXIS 100837, 2022 WL 1997207, at \*9* ("In determining whether the merchant retains the risk of nonpayment, it is significant that 'the agreement provides that [defendant's] written admission of its inability to pay its debt or its bankruptcy constitute events of default under the agreement, which entitle the plaintiff to the immediate full repayment of any of the unpaid purchased amount.'")).

Defendants' MCA agreements prior to 2016 specifically name bankruptcy as an event of default. TAC ¶ 318. From 2016 onwards, the MCAs were revised to exclude the express provisions regarding bankruptcy triggering a default. And other provisions "worked to ensure while bankruptcy may no longer have been an express default under the revised standard form of MCA Agreement, the guarantor continued to be absolutely liable for repayment in the event of a bankruptcy filing." TAC ¶ 320.

Having considered these factors, the Court **[\*14]** is persuaded that the plaintiff has sufficiently pleaded that the agreements at issue constitute usury under New York law and satisfy the RICO statute unlawful debt provision. Other courts in this district faced with substantially similar facts have found the MCAs at issue are not simply business-to-business contracts but actual loans. See *Lateral Recovery LLC v. Queen Funding, LLC, No. 21-cv-9607 (LGS), 2022 U.S. Dist. LEXIS 129032, 2022 WL 2829913 (S.D.N.Y. July 20, 2022)*; *Fleetwood Servs., LLC v. Ram Cap. Funding LLC, No. 20-cv-5120 (LJL), 2021 U.S. Dist. LEXIS 94381, 2021 WL 1987320 (S.D.N.Y. May 18, 2021)*.

### III. RICO Conspiracy Claim

Defendants' sole argument against Plaintiffs' RICO Conspiracy Claim is that Plaintiffs did not sufficiently plead a RICO violation. As this argument is meritless, Plaintiffs' conspiracy claim survives Defendants' motion to dismiss. See *Lateral Recovery, 2022 U.S. Dist. LEXIS 129032, 2022 WL 2829913, at \*8*.

### IV. Wrongful Execution

In light of the New York Court of Appeals' opinion in *Plymouth Venture Partners, II, L.P. v. GTR Source, LLC, 37 N.Y.3d 591, 163 N.Y.S.3d 467, 183 N.E.3d 1185 (2021)*), the Court believes the proper vehicle to litigate this claim is *N.Y.C.P.L.R. § 5240*. The Court will hold a telephonic conference on **October 12, 2022 at 10:30AM Eastern Time**. All Parties shall appear and should contact the Court at **1-888-363-4749 (access code: 3768660)**.

### CONCLUSION

For the foregoing reasons, Defendants motions to dismiss are **DENIED**. The Clerk of the Court is respectfully directed to terminate ECF Nos. 177, 180, 182, 184.

**SO ORDERED**.

**Dated: September 30, 2022**

/s/ Andrew L. Carter, Jr.

**ANDREW L. CARTER, JR.**

**United States [\*15] District Judge**

2022 U.S. Dist. LEXIS 180309, *15

**New York, New York**

---

**End of Document**