UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                    :

| | | |
|---|---|---|
| DARKPULSE, INC., | : | |
| Plaintiff, | : | 22 Civ. 45 (LGS) |
| | : | |
| -against- | : | <u>ORDER</u> |
| | : | |
| EMA FINANCIAL, LLC, et al., | : | |
| Defendants. | : | |

------------------------------------------------------------X

LORNA G. SCHOFIELD, District Judge:

       Plaintiff DarkPulse, Inc. brings this civil action against Defendants EMA Financial, LLC ("EMA"), EMA Group, LLC ("EMA Group"), and Felicia Preston, the sole owner of EMA Group.  In September 2018, Plaintiff and EMA executed a Securities Purchase Agreement (the "Agreement") and a Convertible Note (the "Note") (together, the "Securities Contracts"), which gave EMA the option to convert Plaintiff's debt into shares of Plaintiff's stock.  In a series of transactions in 2019 and 2020, EMA exercised this option, receiving over 567 million shares of Plaintiff's stock with a market value when converted of over $265,000.  Plaintiff alleges the Securities Contracts violate the Securities Exchange Act ("Exchange Act"), 15 U.S.C. § 78a, et seq., the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, et seq., and New York state law.  Defendants move to dismiss the First Amended Complaint ("FAC").  For the reasons below, the motion is granted in part and denied in part.

## I.  BACKGROUND

       The following facts are taken from the FAC and its exhibits.  *See Lively v. WAFRA Inv. Advisory Grp., Inc.*, 6 F.4th 293, 306 (2d Cir. 2021).  The facts are construed in the light most favorable to Plaintiff as the non-moving party and presumed to be true for the purpose of this motion.  *Id.* at 299 n.1.

Defendant EMA is a lender that offers financing to small public companies by purchasing convertible notes.  Defendant EMA Group is the investment manager of EMA, and Defendant Felicia Preston is the managing member of EMA and EMA Group, with control over both entities.  EMA's business model consists of purchasing convertible notes from small companies in need of financing, converting the debt under those notes into shares of stock in those companies, and then selling the stock in the public market.

Plaintiff is a Delaware company, with its principal place of business in New York, whose stock trades in the over-the-counter market.  On September 25, 2018, Plaintiff and Defendant EMA executed the Securities Contracts.  In exchange for $94,000, EMA received the Note, a promissory note in the principal amount of $100,000 with an annual interest rate of 8% and a nine-month maturity date.  The Note also contains a conversion option allowing EMA to exchange the accrued debt, in part or in full, for shares of Plaintiff's stock.  The conversion option allows EMA to exchange the debt "in its sole and absolute discretion, at any time" at a conversion price equal to a 30% discount from the stock's market price.  The Agreement also allows EMA to offset and withhold from the conversion price $4,000 in fees and expenses related to the execution of the Securities Contracts.

Beginning in April 2019 and ending in October 2020, EMA submitted nineteen conversions under the Note.  In total, EMA converted $83,244.18 in debt and received more than 567 million shares of Plaintiff's stock with a market value of $265,493.55 at the time of conversion.

## II.  STANDARD

To withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Kaplan v. Lebanese Canadian Bank, SAL*, 999 F.3d 842, 854 (2d Cir. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Iqbal*, 556 U.S. at 678; *accord Dane v. United Healthcare Ins. Co.*, 974 F.3d 183, 189 (2d Cir. 2020).  It is not enough for a plaintiff to allege facts that are consistent with liability; the complaint must "nudge[]" claims "across the line from conceivable to plausible."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  To survive dismissal, "plaintiffs must provide the grounds upon which [their] claim rests through factual allegations sufficient to raise a right to relief above the speculative level."  *Rich v. Fox News Network, LLC*, 939 F.3d 112, 121 (2d Cir. 2019) (alteration in original) (internal quotation marks omitted).  "The proper question is whether there is a permissible relevant inference from all of the facts alleged, taken collectively, not whether an inference is permissible based on any individual allegation, scrutinized in isolation . . .  Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Vengalattore v. Cornell Univ.*, 36 F.4th 87, 102 (2d Cir. 2022) (cleaned up).

## III.  DISCUSSION

The Exchange Act and constructive trust claims are dismissed.  The civil RICO claim is dismissed only as to Defendant EMA and survives as to Defendants EMA Group and Preston. The unjust enrichment claim survives.

**A. Exchange Act Claims (Counts I, II and III)**

The FAC asserts three causes of action under the Exchange Act, alleging that EMA acted as an unregistered dealer of securities and that Preston is liable as a control person of EMA. The Exchange Act includes a statute of limitations of one year after the discovery of an alleged violation, and a statute of repose of three years after the violation, irrespective of when it was discovered. Because Plaintiff did not bring its claims within the statute of repose, Defendants' motion to dismiss the Exchange Act claims is granted.

The FAC alleges a violation of Exchange Act § 15(a), which bars "any broker or dealer . . . to make use of . . . any means or instrumentality of interstate commerce to effect any transactions in, or to induce or attempt to induce the purchase or sale of, any security . . . unless such broker or dealer is registered" with the Securities and Exchange Commission. 15 U.S.C. § 78o(a)(1). Exchange Act § 29(b) states "[e]very contract made in violation of any provision of this chapter" and "every contract . . . the performance of which involves the violation of, or the continuance of any relationship or practice in violation of, any provision of this chapter . . . shall be void." 15 U.S.C. § 78cc. A proviso to Exchange Act § 29(b) adds a statute of limitations and a statute of repose: "[N]o contract shall be deemed to be void by reason of this subsection . . . unless such action is brought within one year after the discovery that such sale or purchase involves such violation and within three years after such violation." *Id.*

Plaintiff and EMA executed the Securities Contracts on September 25, 2018. Any Claim alleging that EMA was acting as an unregistered broker-dealer in violation of Exchange Act § 15(a) was required to be filed by September 25, 2021. This action was commenced on January 4, 2022. The FAC's Exchange Act claims are therefore untimely under § 29(b). *See, e.g.,*

4

*Anderson v. Binance*, No. 20 Civ. 2803, 2022 WL 976824, at *3 (S.D.N.Y. Mar. 31, 2022)

(dismissing claims under § 29(b) as untimely under the statute of limitations), *appeal docketed*,

No. 22-972 (2d Cir. May 2, 2022); *Alpha Capital Anstalt v. Oxysure Sys., Inc.*, 216 F. Supp. 3d

403, 408 (S.D.N.Y. 2016) (rejecting an affirmative defense to contract enforcement based on

§ 15(a) because it was raised after the statute of limitations ran).

        Plaintiff's arguments to evade the statute of repose are unpersuasive.  Plaintiff first

argues that the limitations periods in § 29(b) do not apply to claims under § 15(a).  This

argument is belied by the FAC itself and § 29(b).  The FAC expressly relies on "15 U.S.C. §

78cc" -- which is § 29(b) -- in seeking relief in the form of a declaration that the Securities

Contracts "are void and subject to rescission."  Also, § 29(b) by its terms applies to "every

contract made in violation of *any* provision of this chapter."  15 U.S.C. § 78cc(b) (emphasis

added).  The "chapter" in question is the entirety of the Exchange Act, embodied in 15 United

States Code § 78 and its subparts, including § 15(a) codified at 15 U.S.C. § 78o(a).  *See* 15 USC

§ 78a ("This chapter may be cited as the "Securities Exchange Act of 1934.").

        To support its reading, Plaintiff cites *Lawrence v. Richman Grp. of Conn., LLC*, 407 F.

Supp. 2d 385 (D. Conn. 2005).  *Lawrence,* as a district court case, is not binding authority and in

any event is distinguishable.  The court in *Lawrence* rejected an argument based on the statute of

limitations where the defendant raised the plaintiff's alleged § 15(a) violation as an affirmative

defense.  *See id.* at 389 n.7 ("[T]he plain language of the statute applies only to '*actions*

maintained in reliance upon th[e] subsection,' *i.e.*, affirmative actions for rescission, not to

defenses raised.").  Here, the FAC asserts affirmative causes of action alleging violations of §

15(a).  Section 29(b)'s statute of repose applies to claims such as Plaintiff's, requiring it to bring them within three years of the relevant violation, here the formation of the Securities Contracts.

Plaintiff next argues that *Alpha Capital Anstalt* and *Kahn v. Kohlberg, Kravis, Roberts & Co.*, 970 F.2d 1030 (2d Cir. 1992), cited by Defendants, indicate that claims under § 15(a) involve fraud, and are therefore governed by the Sarbanes-Oxley Act of 2002, 15 U.S.C. § 7201 et seq., which creates a five-year statute of repose for an action involving "a claim of fraud, deceit, manipulation, or contrivance in contravention of a regulatory requirement concerning the securities law."  28 U.S.C. § 1658(b)(2).  Plaintiff cites no cases in support of this argument, conceding that "[w]hether a claim under § 15(a) is governed by Sarbanes-Oxley is unclear." Courts in this Circuit have continued to apply § 29(b)'s statutes of limitations and repose to claims under the Exchange Act, including § 15, following the passage of Sarbanes-Oxley.  *See, e.g.*, *Anderson*, 2022 WL 976824, at *2-3; *Barilli v. Sky Solar Holdings, Inc.*, 389 F. Supp. 3d 232, 263-64 (S.D.N.Y. 2019); *Massachusetts Bricklayers & Mason Funds v. Deutsche Alt-A Securities*, 273 F.R.D. 363, 365 (E.D.N.Y. 2011).  Plaintiff has not provided sufficient reason to depart from this well-established practice.

Finally, Plaintiff argues that under the continuing violation doctrine, each conversion of debt into securities restarts the statute of limitations.  This argument is without merit.  Plaintiff's Exchange Act claims seek rescission of the Securities Contracts because of EMA's status as an unregistered broker-dealer at the time of formation.  The statute of repose began running on September 25, 2018, when the parties entered into the Securities Contracts.  *See Kahn*, 970 F.2d at 1041 ("The possibility of rescinding the contract . . . does not make the subsequent payments new wrongs. . . . [P]erformance under the contract merely affects damages and does not give rise

6

to a new cause of action.") (applying Exchange Act's one-year/three-year statute of limitations in a case seeking rescission of a contract formed by an unregistered investment advisor).

Accordingly, Defendants' motion to dismiss the Exchange Act claims, Counts I through III of the FAC, is granted.

### B.  Civil RICO Claim (Count IV)

Count IV of the FAC alleges a substantive violation of § 1962(c), which makes it "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt."  18 U.S.C. § 1962(c).  To state a civil RICO claim, a complaint must plead (1) "that the individual defendants committed a substantive RICO violation" and (2) "that the violation proximately caused an injury to [the plaintiffs'] business or property."  *NRP Holdings LLC v. City of Buffalo*, 916 F.3d 177, 196 (2d Cir. 2019); *see also* 18 U.S.C. § 1964(c) (providing a private right of action for persons injured "by reason of" a substantive RICO violation).

Defendants argue that this claim fails because the FAC does not plead a substantive RICO violation.  Specifically, they argue the FAC does not plead a sufficiently distinct RICO "enterprise," a debt that is unlawful on its face and that Defendants are in the business of lending at usurious rates.  Because the FAC adequately pleads each of these elements, Defendants' motion to dismiss the RICO claim is denied.  However, the motion is granted as to EMA.

### 1.  Distinctness

"[T]o establish liability under § 1962(c) one must allege and prove the existence of two distinct entities: (1) a 'person'; and (2) an 'enterprise' that is not simply the same 'person' referred to by a different name." *Cedric Kushner Prom'ns, Ltd. v. King*, 533 U.S. 158, 161 (2001).  The FAC identifies Defendant EMA as the relevant enterprise and Defendants EMA Group and Preston as the relevant persons.  Under *Cedric Kushner*, this is sufficient.  In that case, the president and sole owner of a corporation (the person) was sufficiently distinct from the corporation (the enterprise) to satisfy the distinctness requirement.  *Id.* at 163.  Similarly here, the fact that Preston is the sole owner of EMA Group and had sole and exclusive control over EMA does not prevent her from being sufficiently distinct from the enterprise.

The cases Defendants cite do not change this outcome.  Those cases rejected RICO claims where the alleged RICO "enterprise" was a corporation associating with its own employees or a related corporate entity that functionally acted as a single unit with the RICO "person."  *See Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A.*, 30 F.3d 339, 344 (2d Cir. 1994) (rejecting an enterprise consisting of "a corporate defendant associated with its own employees or agents carrying on the regular affairs of the defendant"); *U1it4less, Inc. v. Fedex Corp.*, 871 F.3d 199, 209 (2d Cir. 2017) (rejecting an enterprise consisting of corporate entities that "operate[d] within a unified corporate structure and are guided by a single corporate consciousness" (internal quotation marks omitted)).  In contrast, in this case, the FAC adequately pleads that Preston, a natural person, and EMA Group used the enterprise of EMA to collect unlawful debt in violation of RICO.

Plaintiff has sufficiently alleged a distinct enterprise, allowing RICO claims against EMA Group and Preston to survive.  However, because EMA is the alleged "enterprise," EMA cannot also be liable for an underlying RICO violation, that is, for "conduct[ing] or participat[ing] . . . in the conduct of such enterprise's affairs." "A corporate entity can be sued as a RICO 'person' or named as a RICO 'enterprise,' but the same entity cannot be both the RICO person and the enterprise."  *U1it4less, Inc.*, 871 F.3d at 205 (cleaned up).  Accordingly, Defendants' motion to dismiss the civil RICO claim is granted as to only EMA.

### 2.  Unlawful Debt

Defendants argue that the FAC lacks sufficient factual allegations that the Securities Contracts qualify as an "unlawful debt," for purposes of RICO.  RICO defines an unlawful debt as one "which is unenforceable under State or Federal law . . . because of the laws relating to usury," and "which was incurred in connection with . . . the business of lending money . . . at a rate usurious under State or Federal law, where the usurious rate is at least twice the enforceable rate."  18 U.S.C. § 1961(6).  The FAC includes factual allegations to satisfy both of these requirements.

Under New York law, a loan is usurious if the interest rate exceeds "six per centum per annum," N.Y. Gen. Obl. Law § 5-501, and is criminally usurious if it has an interest rate "exceeding twenty-five per centum per annum or the equivalent rate for a longer or shorter period," N.Y. Penal Law § 190.40.  The FAC alleges a 73% annual interest rate, which is sufficient to allege an "unlawful debt" under RICO.  To arrive at the 73% rate, the FAC adds:

- the Note's stated interest rate of 8% per annum,[1] plus

- an annualized interest rate of 65% resulting from the conversion option, consisting of:

  o the original issue discount ("OID"), the difference between the principal amount of $100,000 and the purchase price of $94,000, which is $6,000 or 6%, and

  o the value of the conversion option based on a purchase price of 70% of the value of the stock, calculated at 43% ("for every 100 dollars of debt converted, EMA obtained a minimum of $143 in stock"),

  o the OID and conversion option yielding a total of 49%,

  o then annualizing 49% from nine months (the term of the Note from its Issue Date of September 25, 2018, and its Maturity Date of June 25, 2019) to twelve months.

  o for a sum of 65% for the conversion option.

The conversion option provided to Defendant EMA must be considered to determine the effective interest rate. In *Adar Bays, LLC v. GeneSYS ID, Inc.*, the New York Court of Appeals held that "a stock conversion option that permits a lender . . . to convert any outstanding balance to shares of stock at a fixed discount should be treated as interest" for purposes of New York criminal usury law. 179 N.E.3d 612, 614 (N.Y. 2021). The Court explicitly disclaimed any holding on "how to determine the value of stock conversion options . . . and d[id] not endorse any particular methodology," and contemplated factual and expert discovery to develop valuation of options. *Id.* at 625-27. At the motion to dismiss stage, a plaintiff need only allege

---

[1] This rate may be understated, as the Agreement includes "Fees and Expenses," of $4000 or 4%. *See Hillair Capital Investments, L.P. v. Integrated Freight Corp.*, 963 F. Supp. 2d 336, 339 (S.D.N.Y. 2013) ("[W]hen fee payments do not actually reimburse lenders for expenses associated with the loan, and instead are a disguised loan payment, then such fee expenses can be considered in determining the interest rate.").

10

facts that make the claim plausible.  *See Vengalattore*, 36 F.4th at 102.  The FAC sufficiently

alleges that the Note's interest rate was greater than 25% and therefore usurious at the time of

formation, satisfying the first prong of RICO's definition of an "unlawful debt."

Defendants argue that the savings clause of the Agreement, which requires that

Plaintiff's "payments in the nature of interest shall not exceed the maximum lawful rate

authorized under applicable law," prevents the Securities Contracts from being usurious.  This

argument fails because under New York law, usury savings clauses do not save an otherwise

usurious note.  *See American E Group, LLC v. Livewire Ergogenics Inc.*, No. 21 Civ. 1891, 2022

WL 2236947, at *1 (2d Cir. June 22, 2022) (applying New York law to find a promissory note

void); *Sweet Baby Lightning Enters. LLC v. Keystone Capital Corp.*, No. 21 Civ. 6528, 2022

WL 2181450, at *5 (S.D.N.Y. June 15, 2022) (similar).

The FAC sufficiently alleges the second prong of an "unlawful debt" under RICO --

that Defendants were engaged in "the business of lending money . . . at a usurious rate."  The

FAC alleges that Defendants entered into other convertible note transactions that are usurious

under New York law and that these transactions are central to Defendants' business.  Defendants

argue that *Durante Bros. & Sons v. Flushing Nat. Bank*, 755 F.2d 239, 250 (2d Cir. 1985), holds

that allegations of "occasional usurious transactions by one not in the business of loan sharking"

are insufficient to establish RICO liability.  However, these statements were dicta, and therefore

non-binding.  *See Weiss v. David Benrimon Fine Art LLC*, No. 20-3842, 2021 WL 6128437, at

*2-3 (2d Cir. Dec. 28, 2021) (summary order) ("[The quoted] statements in *Durante* were dicta.

. . . [I]t was error to sanction [appellant] for bringing . . . RICO unlawful debt collection claims

while alleging only one usurious loan.").  Taken as a whole, the FAC adequately alleges that

Defendants are in the business of lending at usurious rates.

The FAC adequately pleads a distinct enterprise and an unlawful debt for purposes of

RICO.  Accordingly, Defendants' motion to dismiss Count IV, the RICO claim, is denied,

except as to Defendant EMA.

### C.  Unjust Enrichment (Count V)

Count V of the FAC seeks recovery for unjust enrichment.  Defendants' motion to

dismiss this claim as redundant is denied.

Under New York law, "unjust enrichment lies as a quasi-contract claim and contemplates

an obligation imposed by equity to prevent injustice, in the absence of an actual agreement

between the parties." *Georgia Malone & Co., Inc. v. Rider*, 973 N.E.2d 743, 746 (N.Y. 2012)

(cleaned up); *accord ASG & C, Inc. v. Arch Specialty Ins. Co.*, No. 21 Civ. 1761, 2022 WL

839805, at *1 (2d Cir. Mar. 22, 2022).  Defendants argue that the unjust enrichment claim should

be dismissed because the Securities Contracts exclusively govern the relationship between the

parties.  "Where the parties executed a valid and enforceable written contract governing a

particular subject matter, recovery on a theory of unjust enrichment for events arising out of that

subject matter is ordinarily precluded." *IDT Corp. v. Morgan Stanley Dean Witter & Co.*, 907

N.E.2d 268, 274 (N.Y. 2009) (citation omitted).  However, as discussed above, the FAC

sufficiently pleads that the Securities Contracts are usurious.  The FAC also pleads that they are

void and unenforceable.  Under New York law, a usurious contract "shall be void."  N.Y. Gen.

Oblig. Law § 5-511; *see also Adar Bays, LLC*, 179 N.E.3d at 616 ("[I]f the borrower establishes

the defense of usury in a civil action, the usurious loan transaction is deemed void and

unenforceable[.]").  Because the enforceability of the Securities Contracts is disputed, they do not preclude the unjust enrichment claim.  *See Lax v. Design Quest, N.Y. Ltd.*, 987 N.Y.S.2d 134, 135 (1st Dep't 2014) ("The unjust enrichment claim was correctly sustained because the parties dispute the existence of the various alleged express contracts." (citations omitted)); *Nat'l Convention Servs. v. Applied Underwriters Captive Risk Assurance Co.*, 239 F. Supp. 3d 761, 795 (S.D.N.Y. 2017) (declining to dismiss unjust enrichment claim due to disputes regarding the scope and validity of the contracts that defendants alleged made such a claim redundant).

Defendants also argue that the Court should decline to exercise supplemental jurisdiction over Counts V and VI, which arise out of state law.  This argument is moot because the FAC sufficiently alleges a federal claim, as discussed above.  Defendants' motion to dismiss the unjust enrichment claim, Count V, is denied.

**D.  Constructive Trust (Count VI)**

Count VI of the FAC seeks a constructive trust over the shares of stock transferred pursuant to the Securities Contracts, to avoid "inequitably allow[ing] the Defendants to profit from their own wrongdoing."  "[A] constructive trust . . . is imposed when a defendant's fraudulent, unfair or unconscionable conduct causes him to be unjustly enriched at the expense of another to whom he owed some duty."  *Adams v. Jankouskas*, 452 A.2d 148, 152 (Del. 1982); *accord Matter of Estate of Sullivan*, No. 2018-741, 2021 WL 668005, at *9 (Del. Ch. Feb. 22, 2021).  The constructive trust claim is dismissed because it is not a standalone claim, but the FAC is construed to seek a constructive trust as a remedy for the unjust enrichment claim.

The constructive trust claim arises out of state law and is heard under the Court's supplemental jurisdiction.  New York's choice of law rules govern claims over which the Court

13

has supplemental jurisdiction.  *Rogers v. Grimaldi*, 875 F.2d 994, 1002 (2d Cir. 1989); *Hodnett v. Medalist Partners Opportunity Master Fund II-A, L.P.*, No. 21 Civ. 38, 2022 WL 4072935, at *7 (S.D.N.Y. Sept. 2, 2022).  "Under New York choice-of-law rules, the first step in any choice of law inquiry is to determine whether there is an actual conflict between the rules of the relevant jurisdictions."  *Kinsey v. New York Times Co.*, 991 F.3d 171, 176 (2d Cir. 2021) (internal quotation marks omitted).

Here, the two jurisdictions whose law might apply are New York, the site of the allegedly unjust acts justifying a constructive trust, and Delaware, the situs of the shares over which the constructive trust is sought.  Under New York's choice of law rules, the state with the greatest interest in applying its laws to a constructive trust is the state where the property is located.  *See Chigirinskiy v. Panchenkova*, No. 14 Civ. 4410, 2015 WL 1454646, at *5 (S.D.N.Y. Mar. 31, 2015) (under New York choice of law rules, applying the law of the location of property to a cause of action for constructive trust); *Amusement Industry, Inc. v. Stern*, 693 F. Supp. 2d 327, 342 (S.D.N.Y. 2010) (same).   The shares of Plaintiff's stock transferred under the Securities Contracts are the property that is sought to be placed in trust.  The situs of stock for purposes of a constructive trust is the state of incorporation.  *See Moses v. Apple Hospitality REIT, Inc.*, No. 14 Civ. 3131, 2015 WL 1014327, at *4 (E.D.N.Y. Mar. 9, 2015) (applying New York choice of law rules to conclude, "[w]ith respect to constructive trusts, the law of the situs of the property governs such claims, and where property was in the form of shares, the law of the state of incorporation applies." (internal quotation marks omitted)); *SEC v. Bancorp.*, 138 F. Supp. 2d 512, 531 (S.D.N.Y. 2001) (characterizing a "general rule under both state and federal choice of law rules . . . that the law of the situs of the property, and therefore the trust, governs the

14

determination of whether property in the possession of a debtor is held in constructive trust,"
while citing contrary authority in the case of shares of stock, where the law of the state of
incorporation applies (internal quotation marks and brackets omitted)), *rev'd in part, vacated in
part on other grounds*, 297 F.3d 127 (2d Cir. 2002); *accord* Del. Code Ann. tit. 8, § 169 ("[T]he
situs of the ownership of the capital stock of all corporations existing under the laws of this State
. . . shall be regarded as in this State.").  Plaintiff is incorporated in Delaware, and therefore in
the event of a conflict, Delaware law would apply.

Delaware law does not recognize an independent cause of action for a constructive trust.
The Delaware Court of Chancery recently stated that "'claims' for . . . constructive trusts . . . are
remedies, rather than causes of action," and accordingly dismissed the claim.  *iBio, Inc. v.
Fraunhofer USA, Inc.*, No. Civ. 10256, 2020 WL 5745541, at *12 (Del. Ch. Sept. 25, 2020).
Cases from the Supreme Court of Delaware support the idea that a constructive trust is an
equitable remedy ordered in the event of unjust enrichment.  *See Hogg v. Walker*, 622 A.2d 648,
652 (Del. 1993) ("When one party, by virtue of fraudulent, unfair or unconscionable conduct, is
enriched at the expense of another to whom he or she owes some duty, a constructive trust will
be imposed."); *Adams*, 452 A.2d at 152.  Plaintiff identifies two Court of Chancery decisions that
credited a constructive trust claim, but they significantly pre-date *iBio* and they support viewing
a constructive trust as a remedy for unjust enrichment.  For example, although *Hendry v. Hendry*
discusses "the claim for a constructive trust," No. Civ. 18625, 2006 WL 1565254, at *1 (Del. Ch.
May 26, 2006), that claim is pleaded as one "for constructive trust, trespass, conversion, and/or
unjust enrichment," Second Amended Complaint at 5, *Hendry v. Hendry*, No. Civ. 18625, 2005
WL 5775616.  Similarly, *Oliver v. Boston University* analyzes a putative claim for a constructive

trust under the framework of a claim for unjust enrichment and states "[t]he constructive trust is an equitable remedy that is sometimes imposed after presentation of the merits."  No. Civ. 16570, 2000 WL 1091480, at *9-10 (Del. Ch. July 25, 2000).

Whether New York law recognizes a standalone claim for a constructive trust is an open question.  The New York Court of Appeals has not squarely decided this question but has referred to a request for a constructive trust as "purportedly a cause of action," *Consumers Union of U.S., Inc. v. State*, 840 N.E.2d 68, 77 n.14 (N.Y. 2005), and stated that "a constructive trust is an equitable remedy," *Simonds v. Simonds*, 380 N.E.2d 189, 193 (N.Y. 1978).  However, both the Court of Appeals and the Second Circuit have more recently adjudicated cases involving standalone constructive trust claims without raising questions as to their viability.  *See, e.g., Cortlandt St. Recovery Corp. v. Bonderman*, 96 N.E.3d 191, 196 nn.10-11 (N.Y. 2018); *People ex rel. Spitzer v. Grasso*, 893 N.E.2d 105, 109 (N.Y. 2008); *Jaffer v. Hirji*, 887 F.3d 111, 114-16 (2d Cir. 2018).  Courts in this District applying New York law have split, with some treating a constructive trust as solely a remedy and some treating it as a viable individual claim.  *Compare, e.g.*, *Blank v. TriPoint Global Equities, LLC*, 338 F. Supp. 3d 194, 220 (S.D.N.Y. 2018) ("[S]ince courts have held that a constructive trust is a remedy and not the basis for a separate cause of action, this claim is [dismissed] without prejudice." (internal quotation marks omitted)); *with Bank Capital Servs. LLC v. Chef's Depot Inc.*, No. 19 Civ. 1469, 2019 WL 7291240, at *4 (S.D.N.Y. Dec. 30, 2019) (denying motion to dismiss constructive trust claim in light of viable unjust enrichment claim); *see also Winklevoss Capital Fund, LLC v. Shrem*, 351 F. Supp. 3d 710, 720-21 (S.D.N.Y. Jan. 7, 2019) (collecting cases).

It is unnecessary to predict how the Court of Appeals would decide this question, because the answer does not affect the outcome in this case.  If the Court of Appeals held that no independent cause of action for a constructive trust claim exists under New York law, both New York and Delaware law would compel the same result -- dismissal of the claim.  If the Court of Appeals held that such an independent cause of action is viable, then a conflict of law would exist.  Under New York choice of law rules, Delaware law would govern, and the constructive trust claim would be dismissed.

The dismissal is largely a technicality, because Plaintiff may seek imposition of a constructive trust as an equitable remedy if Plaintiff prevails on the unjust enrichment claim.  *See id.* at 721 ("[E]ven if not permitted to plead constructive trust as a claim, plaintiffs may, if appropriate, later request, as a remedy, the imposition of a constructive trust.").  Accordingly, Defendants' motion to dismiss Count VI, constructive trust, is granted.  Instead, the FAC is construed to seek a constructive trust as a remedy to the unjust enrichment claim.

\*      \*      \*

For the reasons above, Defendants' motion is GRANTED in part and DENIED in part.  Counts I, II and III, alleging violations of the Exchange Act, and Count VI, seeking a constructive trust, of the FAC are **DISMISSED**.  Count IV, the civil RICO claim, is also **DISMISSED** against Defendant EMA.  Defendants' motion to dismiss Count IV against Defendants EMA Group and Preston and Count V, alleging unjust enrichment, is **DENIED**.

An Order issued June 24, 2022, stayed discovery in this case, pursuant to the Private Securities Litigation Reform Act of 1995.  *See* 15 U.S.C. § 78z-1.  By March 13, 2023, the

parties shall file a joint letter and proposed civil case management plan, described in the Court's

Individual Rule IV.A.2.

The Clerk of Court is respectfully directed to close the motion at Dkt. 39.

Dated: March 1, 2023
       New York, New York

**LORNA G. SCHOFIELD**
**UNITED STATES DISTRICT JUDGE**

18